CAROL A. WARFIELD *vs.* BETH ISRAEL DEACONESS MEDICAL
CENTER, INC., & others.[1]

Suffolk. March 5, 2009. - July 27, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Federal Arbitration Act. Massachusetts Arbitration Act. Anti-Discrimination Law,* Arbitration, Employment. *Contract,* Arbitration. *Employment,* Discrimination. *Practice, Civil,* Interlocutory appeal. *Public Policy.*

An employment contract containing an agreement by the employee to limit or waive any of the rights or remedies conferred by G. L. c. 151B is enforceable only if such an agreement is stated in clear and unmistakable terms. [394-401]

In a civil action brought in Superior Court alleging gender-based employment discrimination and retaliation in violation of G. L. c. 151B, the judge properly denied the defendants' motion to dismiss, brought on the ground that the plaintiff's employment agreement (agreement) mandated arbitration of all her claims, where neither the arbitration clause, which provided for the arbitration of any dispute "arising out of or in connection with this [a]greement or its negotiations," nor any of the other provisions contained in the agreement reflected the parties' clear intent to subject statutory discrimination claims to arbitration. [401-402] COWIN, J., dissenting.

Common-law claims that were integrally connected to an employee's claims under G. L. c. 151B were required to be tried in the same action, despite the fact that the common-law claims were covered by an arbitration clause contained in an employment agreement. [403-404]

CIVIL ACTION commenced in the Superior Court Department on March 7, 2008.

Motions to dismiss and to compel arbitration were heard by *Isaac Borenstein,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*John F. Welsh* (*Jennifer Belli* with him) for Beth Israel Deaconess Medical Center, Inc.

*Tracey E. Spruce* for Harvard Medical Faculty Physicians at Beth Israel Deaconess Medical Center, Inc.

*Richard D. Glovsky* for Josef E. Fischer.

[1] Paul F. Levy; Harvard Medical Faculty Physicians at Beth Israel Deaconess Medical Center, Inc.; and Josef E. Fischer.

*Ellen J. Zucker* (*Laura R. Studen* with her) for the plaintiff.

*Ben Robbins, Martin J. Newhouse, & Jo Ann Shotwell Kaplan,* for New England Legal Foundation & another, amici curiae, submitted a brief.

*Patricia A. Washienko,* for American Civil Liberties Union of Massachusetts & others, amici curiae, submitted a brief.

BOTSFORD, J. The plaintiff, Carol A. Warfield, the former chief of anesthesiology at Beth Israel Deaconess Medical Center, Inc. (BIDMC), filed this action in the Superior Court against her employers, alleging gender-based discrimination and retaliation in violation of G. L. c. 151B, and factually related common-law claims. BIDMC and the other defendants moved to dismiss Warfield's complaint and compel arbitration on the ground that the employment agreement she signed soon after she became chief of anesthesiology mandated arbitration of all her claims. A judge in the Superior Court denied the motions, and the defendants filed this interlocutory appeal. We conclude that Warfield's statutory discrimination claims do not fall within the scope of the arbitration clause contained in the employment agreement, and that she may proceed with her discrimination action in the Superior Court. Because her additional claims are wholly intertwined with her statutory discrimination claims, principles of judicial economy dictate that they be tried in the same action.[2]

1. *Facts.* We recite only the facts relevant to the current dispute. Warfield, an anesthesiologist employed by Harvard Medical Faculty Physicians at Beth Israel Deaconess Medical Center, Inc. (HMFP), has been an anesthesiologist on the medical staff of BIDMC since 1980. On March 27, 2000, Warfield entered into an employment agreement with BIDMC and HMFP in which she agreed to serve in the capacity of anesthesiologist-in-chief for BIDMC (agreement).[3] The agreement provides that Warfield's duties as anesthesiologist-in-chief would commence

[2]We acknowledge the amicus briefs filed by New England Legal Foundation and Associated Industries of Massachusetts on behalf of the defendants; and by the American Civil Liberties Union of Massachusetts, Lawyers' Committee for Civil Rights Under the Law of Boston Bar Association, and the National Employment Lawyers Association, Massachusetts Chapter, on behalf of the plaintiff.

[3]The parties to Warfield's employment agreement (agreement) were all represented by counsel in connection with its negotiation and drafting.

on January 1, 2000, and sets forth, inter alia, her duties as chief, her compensation and benefits in that position, and circumstances in which she could be terminated for cause and without cause. The agreement further provides that Warfield remained an employee of HMFP,[4] and that she was bound by the separate articles, bylaws, rules, guidelines, regulations, procedures, and standards of BIDMC, HMFP, and Harvard Medical School that were not part of the agreement. The agreement additionally provides that it supersedes "any and all previous discussions, understandings or agreements between the Physician, HMFP, and/or the Hospital relating to the subject matter hereof or any other employment or contracting relationship between Dr. Warfield and HMFP or the Hospital."

Section 17 of the agreement, titled Arbitration, provides:

> "*Arbitration.* Any claim, controversy or dispute arising out of or in connection with this Agreement or its negotiations shall be settled by arbitration. Each party hereto shall designate an independent arbitrator and these two[5] arbitrators shall select a third independent arbitrator who shall be chairperson of the panel. The arbitrators shall then conduct the arbitration at a mutually acceptable site and a majority shall render a decision as to the matter in dispute, which decision shall be binding on the parties hereto. Each party shall bear the expense of its own arbitrator and an equal share of the expense of the third arbitrator. To the extent not otherwise hereinabove provided, the arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association. The full rules of discovery shall apply to any such proceeding.

> "In no event, however, shall this Section 17 be deemed to preclude a party hereto from instituting legal action seek-

---

[4]The language of the agreement on this point is that "the Physician [Warfield] shall render services as an employee of HMFP to the Hospital and HMFP consistent with the terms of this Agreement."

[5]There were three rather than two parties to the agreement: Warfield, Beth Israel Deaconess Medical Center, Inc. (BIDMC), and Harvard Medical Faculty Physicians at Beth Israel Deaconess Medical Center, Inc. (HMFP). The language in the arbitration clause providing that "[e]ach party" is to select an independent arbitrator might suggest that there be three rather than two independent arbitrators chosen by the parties, but the agreement clearly does not so provide.

ing relief in the nature of a restraining order, an injunction or the like in order to protect her or its rights pending the outcome of an arbitration hereunder. With respect to matters submitted to arbitration other than claims for payment of monies due, the parties shall continue to perform their obligations hereunder relative to said matters pending resolution of the dispute by arbitration."

Neither § 17 nor any other provision of the agreement made reference to employment discrimination statutes or claims.

In the fall of 2001, BIDMC hired Dr. Josef Fischer to be chief of surgery. In January, 2002, Paul Levy was hired as the president and chief executive officer of BIDMC.

Warfield alleges in her complaint that during the next several years, Fischer engaged in a relentless pattern of gender-based discriminatory treatment of her. She also alleges that she repeatedly complained to Levy about Fischer's treatment, but that no or insufficient action was taken. On July 18, 2007, carrying out a decision made by Levy and BIDMC that Warfield characterizes as "discriminatory and retaliatory in its motivation and defaming in its effect," Levy terminated Warfield's appointment as anesthesiologist-in-chief, effective immediately. Warfield further alleges that, since her termination, BIDMC, Levy, and HMFP have "marginalize[d]" her by collaborating to push her out of her job as a staff anesthesiologist at BIDMC, and to deny her benefits to which she would have had access, absent the alleged discriminatory and retaliatory treatment.

Warfield commenced this action in the Superior Court on March 7, 2008.[6] In her complaint, Warfield alleges claims of gender discrimination under G. L. c. 151B, § 4 (1), against BIDMC, Levy, and Fischer; retaliation under G. L. c. 151B, § 4 (4), against all defendants; tortious interference with advantageous or contractual relations against BIDMC, Levy, and Fischer; and defamation against BIDMC, Levy, and Fischer. Her claims of tor-

---

[6]Warfield filed a complaint of discrimination with the Massachusetts Commission Against Discrimination (MCAD) on December 4, 2007; the complaint named BIDMC, HMFP, Josef Fischer, and Paul Levy as respondents. Pursuant to G. L. c. 151B, § 9, she filed her complaint in the Superior Court against the same parties a little over ninety days later, and her complaint before the MCAD was dismissed.

tious interference with contractual relations are entirely based on the same alleged conduct that gave rise to Warfield's statutory discrimination complaints. Her claims of defamation are primarily based on the same conduct that gave rise to her statutory claims, although as discussed below, Warfield additionally alleges that the defendants continued to defame her even after her termination as anesthesiologist-in-chief.

The defendants moved to dismiss the case and to compel arbitration of Warfield's claims pursuant to G. L. c. 251, § 2.[7] On September 15, 2008, a judge in the Superior Court denied the defendants' motions. He concluded that the arbitration clause did not reach Warfield's claims for gender discrimination and retaliation because the agreement did not govern her employment relationship with BIDMC and HMFP generally, but only the narrow topic of her duties as chief of anesthesiology, and the claims of discrimination fell outside this narrow topic. He also concluded that to the extent Warfield's claims concerned her termination, they were not arbitrable because the agreement provided specifically that it ended on Warfield's termination, and therefore the arbitration clause would no longer be in effect.

The defendants appealed pursuant to G. L. c. 251, § 18 (*a*) (1), which grants a right of interlocutory appeal from orders denying an application to compel arbitration. We granted the defendants' application for direct appellate review. We affirm the order of the Superior Court judge but for different reasons.

2. *Discussion.* By its express terms, the agreement is governed by Massachusetts law, and thus the Massachusetts Arbitration Act (MAA) applies to it. At the same time, the agreement comes within the scope of the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (2006) (FAA), because it concerns Warfield's employment as anesthesiologist-in-chief, and the defendants, as hospital-based health care providers, are involved in interstate commerce. See *Miller* v. *Cotter*, 448 Mass. 671, 678 (2007). In all relevant respects, the language of the FAA and the MAA providing for enforcement of arbitration provisions are similar, and we have interpreted the cognate provisions in the same manner. *Id.* at 678-679. The FAA provides in relevant part:

[7]BIDMC and Levy also moved to dismiss the case on other grounds that are not relevant to this appeal.

"A written provision in . . . a contract evidencing a trans-
action involving interstate commerce to settle by arbitra-
tion a controversy thereafter arising out of such contract
. . . or the refusal to perform the whole or any part thereof
. . . shall be valid, irrevocable and enforceable, save upon
such grounds as exist at law or in equity for the revocation
of any contract."

9 U.S.C. § 2.[8]

Because procedures to compel arbitration under the FAA apply
only in Federal courts, we apply the MAA's procedures. See *St.
Fleur* v. *WPI Cable Sys./Mutron*, 450 Mass. 345, 351-352 (2008).
The MAA authorizes proceedings in the Superior Court to com-
pel arbitration in accordance with the terms of an arbitration
agreement, and permits an interlocutory appeal from orders deny-
ing an application to compel arbitration. See G. L. c. 251, §§ 2,
18. A defendant's motion to compel arbitration is treated sum-
marily.[9] See *Miller* v. *Cotter*, 448 Mass. at 676; G. L. c. 251,
§ 2. We review the judge's order de novo. See *Commonwealth* v.
*Philip Morris Inc.*, 448 Mass. 836, 844 (2007).

It is settled that the FAA allows for the arbitration of Federal
employment discrimination disputes, unless otherwise barred by
law. See, e.g., *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500
U.S. 20, 24-26 (1991); *Rosenberg* v. *Merrill Lynch, Pierce,
Fenner & Smith, Inc.*, 170 F.3d 1, 19-20 (1st Cir. 1999). We
have not had occasion to rule on whether employment discrimina-
tion claims arising under G. L. c. 151B are arbitrable, but the
parties here correctly assume their arbitrability. The dispute
before us concerns only whether the parties have contractually
agreed, in the agreement, to submit statutory claims of discrimina-
tion to arbitration. See *Mugnano-Bornstein* v. *Crowell*, 42 Mass.

---

[8]The Massachusetts Arbitration Act (MAA), G. L. c. 251, § 1, in turn,
provides in pertinent part:

"A written agreement to submit any existing controversy to arbitration
or a provision in a written contract to submit to arbitration any controversy
thereafter arising between the parties shall be valid, enforceable and ir-
revocable, save upon such grounds as exist at law or in equity for the
revocation of any contract."

[9]The defendants did not request any evidentiary hearing to support their
motion to dismiss and compel arbitration. We therefore analyze the facts al-
leged as we would a motion to dismiss.

App. Ct. 347, 350 (1997), quoting *Local 285, Serv. Employees Int'l Union* v. *Nonotuck (Mugnano-Bornstein) Resource Assocs., Inc.*, 64 F.3d 735, 738 (1st Cir. 1995) ("a party cannot be required to submit to arbitration any dispute which he has not agreed . . . to submit").

We apply general principles of State contract law to determine whether a particular agreement requires arbitration of a claim. *Mugnano-Bornstein, supra.* See *Brennan* v. *King*, 139 F.3d 258, 264 (1st Cir. 1998), quoting *First Options of Chicago, Inc.* v. *Kaplan*, 514 U.S. 938, 944 (1995) ("As with other issues involving the construction of individual employment contracts, in determining whether a contract requires arbitration, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts' "). See also *Volt Info. Sciences, Inc.* v. *Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 474-476, 477 (1989) (where contract covered by FAA but choice of law clause provided California law would govern, parties in effect incorporated California arbitration rules into contract; under those rules, arbitration properly stayed even though FAA would not have called for stay).

The arbitration clause in the agreement provides that "[a]ny claim, controversy or dispute arising out of or in connection with this Agreement or its negotiations shall be settled by arbitration." Federal as well as State law and policy favor arbitration. See *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (Federal); *Miller* v. *Cotter*, 448 Mass. at 676 (Commonwealth). This policy generally instructs us that where a contract has an arbitration clause that is "broad" in its reach, there is a rebuttable presumption that a contract dispute is covered by the clause, and doubts whether a particular dispute comes within the scope of the clause should be resolved in favor of arbitration. See *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 666-667 (2002). See also *Commonwealth* v. *Philip Morris Inc.*, 448 Mass. at 843-844. Cf. *Local No. 1710, Int'l Ass'n of Fire Fighters* v. *Chicopee*, 430 Mass. 417, 421-422 (1999).[10] In a number of contexts, we have construed the phrase "arising out

---

[10]This court's decision in *Local No. 1710, Int'l Ass'n of Fire Fighters* v. *Chicopee*, 430 Mass. 417 (1999), concerned a public sector collective bargaining agreement, not a private employment contract. Nevertheless, this case is

of" and similar phrases (e.g., "connected to" or "relating to") in an arbitration clause as constituting "broad" language that invokes the FAA's (and MAA's) presumption in favor of arbitration. See, e.g., *Commonwealth* v. *Philip Morris Inc.*, *supra* at 844-845 (settlement agreement between Commonwealth and tobacco companies providing for arbitration of disputes "arising out of" or "relating to" calculation of companies' annual payments required arbitration of claim under agreement); *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, *supra* at 666 (construction subcontracts between general contractor and subcontractor providing for arbitration of claims "arising out of or relative to" subcontracts required arbitration of all parties' construction project claims, including claim under G. L. c. 93A). However, this court has never been called on to interpret the scope of such language when used in an employment agreement's arbitration clause where the employee raises claims of discrimination under G. L. c. 151B. Cf. *Mugnano-Bornstein*, 42 Mass. App. Ct. at 351-353.[11]

Our State law principles of contract interpretation make clear that considerations of public policy play an important role in the interpretation and enforcement of contracts. See *Feeney* v. *Dell Inc.*, *ante* 192, 193 (2009) (Commonwealth's strong public policy supporting ability of consumers to bring class actions as means of seeking remedy for unfair or deceptive commercial conduct rendered unenforceable sales contract arbitration provision bar-

---

often cited as the State law source, or at least an important source, of the principle that the presumption of arbitrability applies to a private agreement.

[11]In *Mugnano-Bornstein* v. *Crowell*, 42 Mass. App. Ct. 347 (1997) (*Mugnano-Bornstein*), the Appeals Court addressed the question whether the arbitration clause in the plaintiff's employment agreement covered her claims of sexual harassment and gender discrimination in violation of G. L. c. 93 and G. L. c. 151B. The clause provided in relevant part: "I hereby agree that any controversy arising out of or in connection with my compensation, employment or termination of employment shall be submitted to arbitration . . . ." *Id.* at 348 n.3. The employment agreement did not contain any specific reference to claims of sexual harassment or gender discrimination. Stating that the comprehensive scope of the arbitration clause created a presumption of arbitrability, the Appeals Court concluded that the clause covered the plaintiff's claims because they arose out of her employment and later termination from her job. *Id.* at 352-353. Federal courts have similarly construed comparable language in arbitration clauses of employment agreements. See, e.g., *Myrick* v. *GTE Main Inc.*, 73 F. Supp. 2d 94, 95 (D. Mass. 1999). For reasons discussed *infra*, and applying Massachusetts rules of contract interpretation, we do not adopt *Mugnano-Bornstein*'s analysis.

ring class actions). See also, e.g., *A.Z.* v. *B.Z.*, 431 Mass. 150, 160 (2000); *Beacon Hill Civic Ass'n* v. *Ristorante Toscano, Inc.*, 422 Mass. 318, 320-322 (1996). The Commonwealth has an "overriding governmental policy proscribing various types of discrimination, set forth in G. L. c. 151B." *Massachusetts Bay Transp. Auth.* v. *Boston Carmen's Union, Local 589, ante* 19, 26, 29 (2009). Section 9 of G. L. c. 151B, the Commonwealth's antidiscrimination law, states expressly that it is to "be construed liberally for the accomplishment of its purposes, and any law inconsistent with any provision of [c. 151B] shall not apply." The statute not only establishes substantive rights, but also makes available to an aggrieved party comprehensive administrative as well as judicial avenues of redress for substantive statutory violations.[12] *Thurdin* v. *SEI Boston LLC*, 452 Mass. 436, 441-442 (2008). See *Ayash* v. *Dana Farber Cancer Inst.*, 443 Mass. 367, 391-392, cert. denied sub nom. *Globe Newspaper Co.* v. *Ayash*, 546 U.S. 927 (2005) (G. L. c. 151B is "comprehensive statute enacted to provide judicial and administrative remedies for destructive acts of discrimination in the workplace").

Consistent with the public policy against workplace discrimination reflected in G. L. c. 151B, we conclude that an employment contract containing an agreement by the employee to limit or waive any of the rights or remedies conferred by G. L. c. 151B is enforceable only if such an agreement is stated in clear and unmistakable terms.[13] See *Garfinkel* v. *Morristown Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. 124, 130-132 (2001) (plaintiff

---

[12]The administrative avenue includes provisions for the MCAD to (1) prosecute the discrimination claim on behalf of the complainant and to vindicate the public interest, (2) award damages to the complainant in appropriate cases for emotional distress, and (3) fashion equitable remedies intended to promote the broader public interest in eliminating employment discrimination. See G. L. c. 151B, §§ 5, 6. See also *Stonehill College* v. *Massachusetts Comm'n Against Discrimination*, 441 Mass. 549, 563, cert. denied sub nom. *Wilfert Bros. Realty Co.* v. *Massachusetts Comm'n Against Discrimination*, 543 U.S. 979 (2004). The judicial remedy includes the right to a speedy trial, see G. L. c. 151B, § 9, as well as rights generally available in a judicial forum such as the right to a jury trial, full discovery limited only by the Massachusetts Rules of Civil Procedure, and full appellate review.

[13]While not an issue in this case, it seems obvious that in view of the strength of the Commonwealth's policy against employment discrimination, no employment contract purporting to waive entirely an employee's right to assert or seek any redress for a claim of discrimination, no matter how

physician's gender-based discrimination claims against defendant employer not subject to arbitration under arbitration clause in employment contract where terms of contract not sufficiently clear to constitute waiver of plaintiff's remedies under New Jersey antidiscrimination law).

The interpretive rule we state here is not inconsistent with the presumption of arbitrability embedded in the FAA. That presumption signifies that "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA] . . . due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sciences, Inc.* v. *Trustees of Leland Stanford Jr. Univ.*, 489 U.S. at 475-476. Accord *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. at 24-25. But the purpose of the FAA was and is "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. at 24. See *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U.S. 213, 219-220 & n.6 (1985); *St. Fleur* v. *WPI Cable Sys./Mutron*, 450 Mass. at 349. The concern was to enforce private agreements to arbitrate according to their terms, not to encourage arbitration of contractual disputes for its own sake. See *Volt Info. Sciences, Inc.*

unambiguously the waiver might be stated, would be entitled to enforcement. Cf. *Spence* v. *Reeder*, 382 Mass. 398, 412 (1981) ("courts have long refused to give effect to purported waivers of statutory rights where enforcement of particular waiver would do violence to the public policy underlying the legislative enactment"); *Canal Elec. Co.* v. *Westinghouse Elec. Corp.*, 406 Mass. 369, 378 (1990), quoting *Spence* v. *Reeder, supra* at 413. A more limited contractual waiver is a different matter. An agreement to arbitrate employment discrimination claims represents a limited waiver of rights under G. L. c. 151B. An employee who agrees to arbitrate such a claim of course does not forgo the substantive rights afforded by the statute, see generally *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985), but does give up the substantial right to seek administrative or judicial remedies. Because it is not raised here, we do not reach the question whether, in view of our public policy proscribing employment discrimination, any additional protections beyond unambiguous language may be necessary before an employment contract may provide for limitations on the rights and remedies spelled out in G. L. c. 151B.

v. *Trustees of Leland Stanford Jr. Univ., supra* at 474-475. See also *Dean Witter Reynolds Inc.* v. *Byrd, supra* at 221.

Our interpretive rule states only that as a matter of the Commonwealth's general law of contract, a private agreement that purports to waive or limit — whether in an arbitration clause or on some other contract provision — the employee's otherwise available right to seek redress for employment discrimination through the remedial paths set out in G. L. c. 151B, must reflect that intent in unambiguous terms.[14] In relation to an arbitration clause, the rule continues to uphold the language and generous spirit of the FAA and the Commonwealth's own public policy in favor of arbitration agreements: parties to an employment contract are free to agree on arbitration of statutory discrimination claims, and the presumption of arbitrability is in effect. However, parties seeking to provide for arbitration of statutory discrimination claims must, at a minimum, state clearly and specifically that such claims are covered by the contract's arbitration clause.[15,16]

---

[14]We recognize that where the FAA applies, it would preempt a conflicting State law — one that might, for example, bar arbitration or authorize a party to proceed in a judicial forum regardless of the party's having entered into an agreement to arbitrate. See, e.g., *Perry* v. *Thomas*, 482 U.S. 483, 490-492 (1987). We also appreciate that a State court cannot invalidate an arbitration agreement in a private contract pursuant to a State law or policy that applies *only* to arbitration agreements when doing so would be in conflict with the FAA. See *Doctor's Assocs., Inc.* v. *Casarotto*, 517 U.S. 681, 687 (1996). As indicated in the text, however, our rule of contract interpretation neither bars agreements to arbitrate employment discrimination disputes nor applies only to arbitration clauses.

[15]The Supreme Court, which frequently has instructed all State and Federal courts to address questions of arbitrability "with a healthy regard for the federal policy favoring arbitration," *Moses H. Cone Memorial Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), has very recently observed that this is a "vague prescription" with an opaque meaning. *Arthur Andersen LLP* v. *Carlisle*, 129 S. Ct. 1896, 1902 n.5 (2009). In any event, an appropriately respectful regard for the Federal policy favoring arbitration does not require arbitration where an agreement is so vaguely or generally worded that an employee would not know that she had waived her right to pursue statutorily available administrative and judicial remedies. Cf. *Campbell* v. *General Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 559 (1st Cir. 2005) ("an employer who takes a barebones approach to affording notice [of what claims are subject to arbitration] runs the risk that its efforts will fall short").

[16]We emphasize that we deal here with what we have termed an "overriding" statutorily expressed, public policy against discrimination. *Massachusetts Bay Transp. Auth.* v. *Boston Carmen's Union, Local 589, ante* 19, 26 (2009). The presumption of arbitrability that accompanies the use of a "broad"

A recent decision of the United States Supreme Court supports our view that an intent to arbitrate statutory employment discrimination claims should be clearly stated in order to be enforced. See *14 Penn Plaza LLC* v. *Pyett*, 129 S. Ct. 1456 (2009). The *14 Penn Plaza* case concerned a collective bargaining agreement, and although we are aware of the significant differences between collective bargaining agreements and individual employment contracts, the Supreme Court's decision is instructive. The Court upheld the validity of agreements to arbitrate statutory discrimination claims in a NLRA-governed collective bargaining agreement, so long as the agreement to arbitrate such claims is "explicitly stated" in the agreement.[17] *Id.* at 1465. In reaching this conclusion, the Court stated that "[n]othing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative." *Id.*

We return to the agreement in this case to determine whether its arbitration clause or any other of its provisions reflect a clear intent to subject statutory discrimination claims to arbitration.[18]

---

arbitration clause, articulated in our cases such as *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 666 (2002), serves the purpose of generally providing interpretive guidance to contracting parties and avoiding or at least reducing the need for frequent litigation over whether a particular dispute is or is not covered by a particular arbitration clause. But the countervailing public policy reflected in G. L. c. 151B of protecting against employment discrimination and offering employees comprehensive administrative and judicial remedies is so strong that, in our view, it calls for distinct treatment. Our conclusion in this case should not be understood to suggest that parties entering into an employment (or any other) contract must specifically list every possible statutory claim that might arise or else the claim will not be covered by an otherwise "broad" arbitration clause.

[17]In *14 Penn Plaza LLC* v. *Pyett*, 129 S. Ct. 1456 (2009), the Supreme Court concluded that Federal law permits a collective bargaining agreement to compel arbitration of claims alleging statutory discrimination, provided the provision is clearly stated. *Id.* at 1474. The four dissenting Justices disagreed with the Court's holding that a collective bargaining agreement could waive an individual's right to court access for individually based statutory claims (and further disagreed with the Court's description of the Supreme Court's precedent), but they did not challenge the clarity of the notice provided by the collective bargaining agreement under review in the case. *Id.* at 1476-1481 (Souter, J., dissenting, with whom Stevens, Ginsburg, & Breyer, JJ., joined).

[18]As indicated at the outset, the agreement expressly provides that it is to be "governed by the laws of the Commonwealth of Massachusetts," and therefore the rule of contract interpretation discussed above applies to it. Cf.

Section 17, the arbitration clause, requires arbitration of any dispute "arising out of or in connection with this Agreement or its negotiations." The phrase, "arising out of or in connection with the Agreement or its negotiations" is not defined.

Contrary to the dissent, our review of the agreement does not persuade us that the arbitration clause at issue covers claims of statutorily based gender discrimination and retaliation under G. L. c. 151B. The clause refers to disputes arising out of or concerning the agreement or negotiations leading to the agreement rather than concerning employment generally, and it seems to presume a continuing working relationship even as disputes pertaining to the provisions of the agreement would be resolved through arbitration.[19] Read as a whole, the contract language chosen by the parties suggests an intent to arbitrate disputes that might arise from or be connected to the specific terms of the agreement itself; there is no contractual term dealing with discrimination. It is true, as the defendants point out, that the agreement has in effect an integration clause in § 19 stating that the agreement "supersedes any and all previous discussions, understandings or agreements between [Warfield], HMFP and/or [BIDMC] relating to the subject matter hereof or any other employment or contracting relationship between Dr. Warfield and HMFP or [BIDMC]." This provision does reference Warfield's "employment" generally, but it sheds no light on the nature or scope of any previous discussions, understandings, or agreements that she may have had with the defendants. More to the point we discuss in this opinion, there is nothing in the arbitration clause or elsewhere in the agreement stating that any claims of employment discrimination by Warfield are subject to arbitration. We thus conclude that the terms of the agreement are insufficiently clear to constitute an enforceable agreement by Warfield to arbitrate her claims that the defendants violated her rights under G. L. c. 151B.[20]

---

*Volt Info. Sciences, Inc.* v. *Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 472, 474-477 (1989).

[19]Section 17 of the agreement specifies that "[w]ith respect to matters submitted to arbitration other than claims for payment of monies due, the parties shall continue to perform their obligations hereunder relative to said matters pending resolution of the dispute by arbitration."

[20]In reaching this conclusion, we agree with the Superior Court judge that the defendants' motions to compel arbitration should be denied. We do

Having concluded that Warfield's statutory claims are not covered by the arbitration clause of the agreement, we turn to her common-law claims. Warfield alleges tortious interference with contractual relations and defamation against defendants BIDMC, Levy, and Fischer. Her claim of tortious interference with contractual relations is based entirely on the same conduct that is the basis for her claims pursuant to G. L. c. 151B. Her defamation claim is based on statements allegedly made by the defendants both prior to and subsequent to her termination. However, the posttermination comments are inextricably intertwined with her termination, because, as previously noted, the gist of Warfield's allegations is that the defendants have defamed her in the course of their attempts to justify to others their decision to terminate Warfield and as they carried out those provisions in the agreement pertaining to her posttermination status as a hospital physician.

We recognize that in appropriate instances, a plaintiff's complaint may be resolved through arbitration of those claims that are covered by an arbitration clause and litigation of those claims that are not so covered, despite the lack of efficiency of such an outcome. See *Miller* v. *Cotter*, 448 Mass. at 685, 686 (that arbitration agreement may result in actions brought in two forums and thereby be "inconvenient, duplicative, or inefficient" is not determinative if it is "necessary result" of choice made when parties entered into arbitration agreement). See also *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U.S. at 220-221. However, proceeding in two forums is not proper where, as here, Warfield's common-law

not agree, however, with the judge's conclusion that Warfield's statutory discrimination claims relating to her termination are separately barred from arbitration on the grounds that the employment agreement itself ended and was nonoperative when Levy terminated Warfield's service as anesthesiologist-in-chief. Agreements to arbitrate are separable from and generally survive the termination of the underlying contract. See, e.g., *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 445-446 (2006) (arbitration provisions "are enforceable apart from the remainder of the contract"); *Mendez* v. *Trustees of Boston Univ.*, 362 Mass. 353, 356 (1972) (termination of contract does not necessarily terminate provision for arbitration; "[s]uch a provision should be construed as broadly as the parties intended"). Cf. *Nolde Bros.* v. *Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 253-255 (1977) (recognizing presumption that arbitration clause in collective bargaining agreement remains available for resolution of disputes after agreement itself has terminated).

claims are so integrally connected to her G. L. c. 151B claims. Cf. *Mouradian* v. *General Elec. Co.*, 23 Mass. App. Ct. 538, 543 (1987) (although plaintiff brought several claims under various tort and contract theories, common-law claims were merely G. L. c. 151B age discrimination claims dressed "in several different outfits"). Here, the evidence that Warfield would introduce in support of her statutory claims is virtually identical to the evidence she would introduce to support her common-law claims. All of Warfield's claims should therefore be resolved in one judicial proceeding. See *Garfinkel* v. *Morristown Obstetrics & Gynecology Assocs., P.A.*, 168 N.J. at 137 (physician's claims of tortious interference with his economic advantage and defamation should be resolved in same court proceeding as his claims of statutory discrimination).

In light of the foregoing, we do not reach the issue whether the employment agreement would require Warfield to arbitrate her claims against Levy and Fischer.

> *Order denying motions to dismiss and to compel arbitration affirmed.*

COWIN, J. (dissenting). I agree with the court that discrimination claims are arbitrable. While G. L. c. 151B creates substantive rights, and provides both judicial and administrative remedies, there is no legal principle that precludes a potential plaintiff from agreeing that his or her claims shall be arbitrated instead. Indeed, while arbitration clauses in employment agreements are generally inserted at the employer's behest, arbitration may well bring about a speedier, less expensive, less stressful result from which an employee may be able to benefit. I accept also that, as in the case of any arbitration, the parties must agree that a given dispute is to be arbitrated rather than left to administrative or judicial proceedings. In other words, arbitration cannot be imposed unilaterally; it is a product of a mutual understanding.

Where I depart from the court is with its conclusion that the arbitration clause in this employment agreement does not reflect the consent of all parties to arbitrate discrimination claims. The arbitration provision applies to "*[a]ny* claim, controversy or

dispute *arising out of* or *in connection with* this *Agreement"* (emphasis supplied). Had there been no employment agreement, the plaintiff would have had no claims. Thus, I fail to understand how there can be doubt that the plaintiff's claims arise out of the contract or in connection with it. Nor do I rest this conclusion on the policy favoring arbitration of disputes, though that policy provides additional support; I rely only on what appears to me to be language that is free of ambiguity.

The court pays lip service to the intent of the parties, and then refuses to enforce the clearly stated intent on the basis of its public policy views. In so doing, the court, in my opinion, exaggerates the significance of antidiscrimination claims as opposed to other claims of equal importance to those who assert them. That G. L. c. 151B "shall be construed liberally for the accomplishment of its purposes, and any law inconsistent with any provision of this chapter shall not apply," G. L. c. 151B, § 9, repeats an admonition found in a number of our statutes,[1] and cannot fairly be interpreted to place G. L. c. 151B in a special category insofar as arbitration clauses are concerned. Nor does the nature of antidiscrimination claims require a special approach. We readily enforce the arbitration of constraint, tort, consumer and other claims without insisting on special language in the applicable arbitration agreements, and I see no principled reason, other than the court's preference for the subject matter, why antidiscrimination claims should be treated differently.

The court characterizes its "interpretive rule" as leaving "parties to an employment contract . . . free to agree on arbitration of statutory discrimination claims, and the presumption of arbitrability is in effect. However, parties seeking to provide for arbitration of statutory discrimination claims must, at a minimum, state clearly and specifically that such claims are covered by the contract's arbitration clause ." *Ante* at 400. In my opinion, the parties before us have done so. When they entered the agreement, they stated that they agreed to arbitrate "[a]ny claim, controversy or dispute arising out of or in connection with this Agreement." They could hardly expect that the court would rewrite their agreement for them by insisting on a redrafting

---

[1]See, e.g., St. 1978, c. 512 ("claims and indemnity procedure for the Commonwealth, its municipalities, counties and districts"). As to liberal construction, see, e.g., G. L. c. 175A, § 2; G. L. c. 174A, § 2.

of contractual language that plainly expresses their purpose. We can only wonder what type of claims will be singled out next for such treatment. Accordingly, I respectfully dissent.