NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

13-P-1480                                    Appeals Court

NATALY MINKINA  vs.  LAURIE A. FRANKL & others.[1]


No. 13-P-1480.

Suffolk.     May 12, 2014. - September 15, 2014.

Present:  Cypher, Kafker, & Hanlon, JJ.


Attorney at Law, Malpractice, Withdrawal.  Anti-Discrimination
    Law, Arbitration, Employment.  Arbitration.  Practice,
    Civil, Notice of appeal, Amendment of complaint, Costs.



Civil action commenced in the Superior Court Department on
May 11, 2009.

A motion to strike expert testimony was heard by Edward P.
Leibensperger, J.; a motion for leave to file a second amended
complaint was considered by Janet L. Sanders, J.; and the case
was heard by Peter M. Lauriat, J., on a motion for summary
judgment.


Richard L. Neumeier for the plaintiff.
Kevin G. Powers (Robert S. Mantell with him) for the
defendants.


KAFKER, J.  Nataly Minkina contends that her former

counsel, Laurie A. Frankl, Jonathan J. Margolis, and Rodgers,

---

[1] Jonathan J. Margolis and Rodgers, Powers & Schwartz, LLP.

Powers and Schwartz, LLP (hereinafter, collectively, RPS), committed legal malpractice during their representation of her in an employment discrimination action.  More particularly, she claims that RPS mishandled its opposition to a motion to compel arbitration by failing to recognize that the reasoning in a then-controlling decision of this court, Mugnano-Bornstein v. Crowell, 42 Mass. App. Ct. 347 (1997) (Mugnano-Bornstein), would be rejected by the Supreme Judicial Court in a later decision, Warfield v. Beth Israel Deaconess Med. Center, Inc., 454 Mass. 390 (2009) (Warfield).  Minkina also contends that RPS breached its fiduciary duty to her when it withdrew from her representation after she criticized the performance of Frankl and other lawyers in the firm and accused at least Frankl of unprofessional conduct.  In addition, Minkina contends that the judge abused his discretion in denying her second motion to amend her complaint.  For the reasons stated below, we affirm the decision of the Superior Court judge rejecting the malpractice and breach of fiduciary duty claims and allowing the defendants' motion for summary judgment.  We also conclude that the denial of the second motion to amend the complaint was not an abuse of discretion.

Background.  In 2002, the plaintiff, Nataly Minkina, was hired as a physician by the Affiliate Physicians Group of Beth Israel Deaconess Medical Center (APG).  At that time, she

executed an employment agreement that contained an arbitration clause. The clause provided:

"In the event that any dispute arising out of or relating to this Agreement, including without limitation any dispute regarding the validity, breach or termination of this Agreement, should occur, the parties shall for a period of thirty (30) days meet and negotiate in good faith to resolve the dispute. Any dispute that is not resolved by the parties within thirty (30) days shall be finally settled by arbitration. . . . The parties irrevocably waive any right to redress any such dispute other than by such arbitration."

In 2003, Minkina, who was then represented by counsel other than RSP, filed charges of discrimination pursuant to G. L. c. 151B against APG with the Massachusetts Commission Against Discrimination (MCAD). In September, 2004, APG terminated her employment. In November, 2004, predecessor counsel removed Minkina's MCAD action to the Superior Court. In January, 2005, APG filed its answer to Minkina's complaint, moved to dismiss one count of the complaint, and commenced discovery. After APG's motion to dismiss was denied and Minkina responded to APG's first request for discovery, APG moved in June, 2005, to compel arbitration of the employment discrimination claims. By this time, Minkina had retained RPS to represent her.

In its memorandum in support of its motion to compel arbitration, APG argued that the arbitration clause in Minkina's employment agreement was broad, not narrow, and that the Appeals Court decision in Mugnano-Bornstein, supra, and the Supreme

Judicial Court decision in Drywall Sys., Inc. v. ZVI Constr. Co., 435 Mass. 664, 666-667 (2002) (Drywall Sys., Inc.), were controlling precedents requiring the arbitration of Minkina's discrimination claims. In Mugnano-Bornstein, supra at 353, this court required the arbitration of G. L. c. 151B claims based on an arbitration clause governing "any controversy concerning . . . termination of employment," and in Drywall Sys., Inc., supra at 667, the Supreme Judicial Court required arbitration of claims under G. L. c. 93A based on an arbitration clause governing "[a]ny controversy or claim . . . arising out of or related to this [s]ubcontract."

RPS did not argue that the arbitration clause at issue was narrower than the ones referenced in Mugnano-Bornstein and the other cases cited by APG and therefore not broad enough to encompass the discrimination claims. Rather, RPS contended that (1) the arbitration provision was unenforceable as it contained unconscionable prospective waivers of punitive damages and attorney's fees, (2) APG had waived its right to demand arbitration by engaging in discovery and filing a motion to dismiss, (3) APG failed to meet the terms of the "Dispute Resolution" procedures set forth in the employment agreement, and (4) the arbitration clause did not apply to Minkina's claims against a necessary party, APG's president.

In 2006, a judge in the Superior Court found Minkina's G. L. c. 151B claim arbitrable. The judge relied on the "strong presumption of arbitrability" that attaches to broad arbitration clauses; the breadth of the language of the arbitration clause at issue here, which "encompasses not only claims based on the contract itself, but also . . . disputes arising out of the contractual relationship"; and the rule that "[s]tatutory claims [including discrimination claims] also may be contractually limited to the arbitral forum," as held by the Supreme Judicial Court in Drywall Sys., Inc., and the Appeals Court in Mugnano-Bornstein. The judge rejected the particular arguments made by RPS, although she concluded that attorney's fees were recoverable.

According to Minkina, on May 19, 2006, defendant Laurie Frankl had informed her that APG would be responsible for the payment of all arbitration fees, but four days later Frankl told Minkina that she was incorrect and that Minkina would be responsible for splitting the arbitration fees, requiring her to pay approximately $30,000. Thereafter, Minkina wrote to the partners of RPS via electronic mail message (e-mail) "to complain of gross negligence and unprofessionalism by an attorney of your firm." In the e-mail, Minkina further stated that Frankl had "damaged my case and cost me thousands of dollars," and was "more concerned about complying with APG['s]

attorney['s] demands than helping my case." Minkina also complained about the performance of other lawyers in the firm. She concluded the e-mail by stating, "I do not plan to choose another firm to represent me" and requested a meeting with RPS's partners and that she be given replacement counsel, as she could not "tolerate [the] careless attitude" of her current attorney. That same day, RPS informed Minkina via e-mail that "it is clear that you have lost faith in us as your counsel. Accordingly, we shall withdraw from representing you. We shall, however, give you time to find new counsel." By June 9, Minkina had retained new counsel.

In July, 2006, Minkina filed a complaint with the Office of Bar Counsel (OBC) contending that RPS violated the Massachusetts Rules of Professional Conduct when it advised her regarding the allocation of arbitration fees and when it withdrew its representation. As set forth in a letter to Minkina, an assistant bar counsel at the OBC concluded that "it was not unreasonable for [RPS] to determine that [Minkina's] allegations [regarding Frankl's legal advice] placed them in a position of conflict of interest and, as a result, that they were required to withdraw . . . or, at the least, permitted to withdraw." The assistant bar counsel further stated that the advice regarding the arbitration fees might nonetheless be the basis of a malpractice claim. A member of the Board of Bar Overseers

denied a motion to reconsider the decision on withdrawal, and the Supreme Judicial Court declined an appeal of the decision.

In March, 2009, the arbitrator found that APG had engaged in unlawful employment practices, and awarded Minkina approximately $266,000 in damages, fees, and costs. The arbitrator concluded that punitive damages were not recoverable -- and that he would not have awarded them even if they were. Minkina did not move to vacate or modify the award.

In May, 2009, Minkina filed a malpractice action against RPS, and in July, 2009, she filed a first amended complaint. In her first amended complaint, Minkina alleged that RPS, in filing Minkina's opposition to APG's motion to compel arbitration, "neglected to raise important arguments that might have succeeded if raised, namely that an improper termination of Minkina's employment negates the validity of the employment contract's arbitration clause." In addition, she alleged that RPS had withdrawn its representation prior to the arbitration and had improperly advised her regarding the subject of arbitration fees. Although eventually the arbitrator concluded that the arbitration fees were to be paid by APG, Minkina had been required to split the cost of the arbitration with APG, at least for a period of time.

On July 27, 2009, the Supreme Judicial Court issued its opinion in Warfield, 454 Mass. 390. There, the court held that

for statutory discrimination claims under G. L. c. 151B to be arbitrable, they must be specifically referenced in the arbitration clause. Id. at 398. The court expressly overruled the Appeals Court's analysis in Mugnano-Bornstein, which had rejected such a requirement. Warfield, supra at 397 & n.11.

More than two years later, in December, 2011, Minkina retained an expert, Samuel Estreicher, a New York University School of Law professor and director of the Center for Labor & Employment Law, who opined that "competent employment counsel would have made and pressed the argument that the arbitration clause in [Minkina's] employment agreement with defendants in the [APG] [c]ase was a narrow one and did not authorize arbitration of employment discrimination and other statutory employment claims." He further opined that "[w]ell before the issuance of the Massachusetts Supreme Judicial Court's decision in Warfield . . . competent counsel would have understood that the Mugnano-Bornstein [decision,] . . . on which the trial court in the [APG] [c]ase heavily relied, was plainly distinguishable, as the arbitration clause in that case referred to employment disputes and was not limited to claims arising under the employment agreement, as was true of Minkina's arbitration agreement . . . ." He concluded: "Had Dr. Minkina been able to obtain a jury trial in this case, she would likely have obtained a significantly larger award than she in fact obtained from the

arbitrator. Because of the potential availability of punitive damages, and other factors, competent defense counsel, fearing such a prospect, would likely have settled the case at a level in excess of the award she received from the arbitrator." The assertion that Minkina would likely have obtained a greater recovery in court or through a settlement was struck by a judge in the Superior Court as speculative.

RPS moved for summary judgment on all claims on June 29, 2012. On July 2, 2012, Minkina moved for leave to file a second amended complaint to add a G. L. c. 93A claim, contending that Frankl committed deceptive acts when she told Minkina that an American Arbitration Association case manager had informed Frankl that Minkina's employment agreement was individually negotiated and therefore the arbitration costs would be split between the parties. RPS opposed the motion on multiple grounds, including that RPS would be prejudiced by the three-year delay in filing the second amended complaint, given RPS's recent summary judgment motion and the close of discovery. The motion to amend was denied in July, 2012, for the reasons stated in RPS's opposition. On April 9, 2013, an order entered allowing RPS's motion for summary judgment. The motion judge concluded that the law existing at the time of the motion to compel arbitration, particularly Mugnano-Bornstein, supra, supported the enforcement of arbitration clauses, even where the

clause did not explicitly mention G. L. c. 151B discrimination claims, and that Minkina's assertion that she would have received greater damages in court than in arbitration was too speculative to support a claim for legal malpractice. The judge also rejected the breach of fiduciary duty claim arising out of RPS's discontinuance of its representation, ruling that "Minkina's strong criticism of Frankl's performance, and her assertion that Frankl was unprofessional and may have committed legal malpractice, amounted to a breakdown of the attorney-client relationship sufficient to justify RPS's withdrawal."[2]

Judgment entered on April 10, 2013, dismissing the complaint against the defendants "with costs." RPS served its motion for $5,949.12 in costs on April 23, 2013. On or about April 25, 2013, Minkina filed her notice of appeal of both the memorandum of decision and order on summary judgment (entered April 9, 2013), and the judgment (entered April 10, 2013). On August 1, 2013, the judge allowed the motion for costs, and awarded RPS $5,257.21.

Discussion. 1. Notice of appeal and jurisdiction. As an initial matter, RPS contends that this court lacks jurisdiction to hear this appeal because Minkina's April 25, 2013, notice of appeal of the memorandum of decision and order on judgment

---

[2] The judge also rejected other claims not relevant to this appeal.

(entered April 9, 2013) as well as the judgment (entered April 10, 2013) was rendered premature and a nullity by RPS's motion for costs, which it contends was a motion pursuant to Mass.R.Civ.P. 59(e), 365 Mass. 827 (1974).  See Mass.R.A.P. 4(a), as amended, 430 Mass. 1603 (1999) ("A notice of appeal filed before the disposition of [a rule 59 motion] shall have no effect").  We disagree.  The April 10, 2013, judgment provided for costs.  Compare Lopes v. Peabody, 426 Mass. 1001, 1002 (1997) (where costs apparently were not requested and original judgment failed to assess costs, motion for costs filed nearly five months late treated as untimely pursuant to rule 59[e]).  As an award of costs had been provided for in the judgment, RPS's subsequent motion "for allowance of costs in the amount of $5,949.12" was directed only at the amount of costs.  By appealing the judgment, which expressly included costs, Minkina preserved her right to appeal any particular award of costs.  RPS's motion did not seek to alter or amend the judgment, which already provided for costs; rather, it sought to provide the court with the "information necessary for the computation of [the costs] already awarded."  Liquor Liab. Joint Underwriting Assn. of Mass. v. Hermitage Ins. Co., 419 Mass. 316, 325 n.7 (1995).  It therefore "does not involve a matter of such substance that consideration under rule 59(e) would be required."  Ibid.

2. <u>Malpractice claim</u>.  Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002).  "To prevail on a claim of negligence by an attorney, a client must demonstrate that the attorney failed to exercise reasonable care and skill in handling the matter for which the attorney was retained . . . ; that the client has incurred a loss; and that the attorney's negligence is the proximate cause of the loss . . . ."  <u>Global NAPs, Inc</u>. v. <u>Awiszus</u>, 457 Mass. 489, 500 (2010), quoting from <u>Colucci</u> v. <u>Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C</u>., 25 Mass. App. Ct. 107, 111 (1987).  On appeal, Minkina argues that RPS committed malpractice by not recognizing that <u>Mugnano-Bornstein</u> was distinguishable or incorrectly decided, and that if RPS had avoided arbitration, she would have been awarded more damages in a judicial forum, where punitive damages were available.

We conclude that it is not malpractice to fail to advocate for or anticipate a substantial change in law requiring the overruling of a controlling precedent.  See <u>Davis</u> v. <u>Damrell</u>, 119 Cal. App. 3d 883, 888 (1981) (failure to anticipate "180 degrees shift in law cannot serve as the basis for professional negligence" [citation omitted]); <u>Kaufman</u> v. <u>Stephen Cahen, P.A</u>., 507 So. 2d 1152, 1153 (Fla. Dist. Ct. App. 1987) ("[A]n

attorney's failure to accurately predict changes on an unsettled point of law is not actionable"); Howard v. Sweeney, 27 Ohio App. 3d 41, 43-44 (1985) ("Counsel's failure to predict a subsequent change in a settled point of law cannot serve as a foundation for professional negligence"); 4 Mallen & Smith, Legal Malpractice § 33.5, at 656-657 & n.5 (2014) ("The rule is that an attorney is not liable for an error in judgment concerning a proposition of law that is debatable, uncertain, unsettled, or tactical").  At the time of the motion to compel arbitration, the Appeals Court decision in Mugnano-Bornstein, 42 Mass. App. Ct. at 352, requiring the arbitration of G. L. c. 151B claims based on an arbitration clause governing any controversy arising out of the termination of employment, and the Supreme Judicial Court decision in Drywall Sys., Inc., 435 Mass. at 667, requiring the arbitration of G. L. c. 93A claims based on an arbitration provision governing "[a]ny controversy or claim . . . arising out of or related to this [s]ubcontract," were two of the closest controlling cases.  Both cases referred to the respective arbitration clauses, whether it be controversies arising out of or related to employment or an agreement, as "broad."  Both cases discussed the "presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage . . . .  Such a presumption is particularly applicable where the clause is . . . broad."  Drywall Sys., Inc., supra at 666 (citations and quotations omitted).  See Mugnano-Bornstein, supra at 351 ("[D]oubts regarding arbitrability should be resolved in favor of coverage unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute") (quotations omitted).  Both cases also required the arbitration of statutory claims even though the claims had not been specifically referenced in the arbitration clause at issue, and both courts expressly rejected the requirement of specific reference to statutory claims in the arbitration clause itself.  See Drywall Sys., Inc., supra (interpreting "[a]ny controversy or claim" arising out of or relative to contract to be specific enough to include statutory claims); Mugnano-Bornstein, supra at 353 ("[W]e are not aware of any rule that requires an arbitration agreement to contain a list of the specific claims or causes of action which are subject to arbitration in order to be enforceable.  Indeed, such a requirement would be unreasonable and impractical").

In Warfield, 454 Mass. at 398-400, the Supreme Judicial Court changed the standards for arbitrating G. L. c. 151B claims, expressly overruling aspects of the Mugnano-Bornstein

decision.  The court held that "[c]onsistent with the public policy against workplace discrimination reflected in G. L. c. 151B, we conclude that an employment contract containing an agreement by the employee to limit or waive any of the rights or remedies conferred by G. L. c. 151B is enforceable only if such an agreement is stated in clear and unmistakable terms," and that "parties seeking to provide for arbitration of statutory discrimination claims must, at a minimum, state clearly and specifically that such claims are covered by the contract's arbitration clause."  Warfield, supra at 398, 400.

In Warfield, the Supreme Judicial Court considered this court's decision in Mugnano-Bornstein, noting that the Appeals Court there stated "that the comprehensive scope of the arbitration clause created a presumption of arbitrability, [and] concluded that the clause covered the plaintiff's claims because they arose out of her employment and later termination from her job[,]. . . .[and that] Federal courts have similarly construed comparable language in arbitration clauses of employment agreements."  Warfield, 454 Mass. at 397 n.11.  The Supreme Judicial Court then concluded that in "applying Massachusetts rules of contract interpretation to discrimination claims," it would "not adopt Mugnano-Bornstein's analysis."  Ibid.

The case before us is not one where counsel simply failed to distinguish a readily distinguishable case.  Mugnano-

Bornstein was not merely distinguished by the Supreme Judicial Court in Warfield. Critical parts of Mugnano-Bornstein were directly overruled, particularly Mugnano-Bornstein's rejection of the requirement of a specific reference to discrimination claims in an arbitration clause for such discrimination claims to be arbitrable.[3] Prior to the decision in Warfield, Mugnano-Bornstein was an established Massachusetts precedent that had been cited by the Supreme Judicial Court multiple times, including in Drywall Sys., Inc., 435 Mass. at 667, a decision whose reasoning appeared to further confirm the validity of the approach adopted in Mugnano-Bornstein. Contrary to the position maintained by Minkina, it was not an obviously incorrect statement of the law.[4]

---

[3] The distinction emphasized by Minkina's expert -- that Mugnano-Bornstein referred to claims arising out of the termination of employment as opposed to claims arising out of the termination of an employment agreement -- was relevant but not determinative for the court in Warfield. As the court stated, "More to the point we discuss in this opinion, there is nothing in the arbitration clause or elsewhere in the agreement stating that any claims of employment discrimination by Warfield are subject to arbitration." Warfield, supra at 402. This required the court to overrule and not just distinguish Mugnano-Bornstein.

[4] We also note that RPS did not simply fail to file an opposition or otherwise fold or concede. Compare Global NAPs, Inc. v. Awiszus, 457 Mass. at 499 (failure to file timely notice of appeal). Rather, RPS vigorously fought the motion to compel arbitration and raised numerous arguments, including one that preserved Minkina's right to recover attorney's fees. Instead of making a frontal assault on established precedent, RPS reasonably proposed alternative arguments designed to achieve

Our analysis of this issue is not affected by Minkina's argument, fully developed for the first time on appeal, that RPS should be held to a higher standard of care than the average qualified practitioner because RPS represents itself to be "The Employment Lawyers.com" and specializes in employment law. Cf. Fishman v. Brooks, 396 Mass. 643, 646 (1986) ("An attorney who has not held himself out as a specialist owes his client a duty to exercise the degree of care and skill of the average qualified practitioner"). Even if we were to accept this argument, despite its insufficient factual and legal development in the trial court, and consider the standard of care here to be that of a reasonably competent employment law specialist, our analysis would be the same.[5] Neither a reasonably competent lawyer nor a reasonably competent employment law specialist commits malpractice by failing to anticipate or advocate for the overruling of an established employment law precedent.

---

the same objective. See 4 Mallen & Smith, Legal Malpractice § 33.5, at 656-657 (reasonable tactical decisions not malpractice). Although RPS did not make the successful argument ultimately adopted in Warfield, malpractice law recognizes that "[s]ome allowance must always be made for the imperfection of human judgment." Colucci v. Rosen, Goldberg, Slavet, Levenson & Wekstein, P.C., 25 Mass. App. Ct. at 111, quoting from Stevens v. Walker & Dexter, 55 Ill. 151, 153 (1870).

[5] Minkina's counsel has presented this court with no Massachusetts cases applying a legal specialist standard and recognizes that "[t]he duty of a lawyer specialist has not been expressly addressed by Massachusetts appellate courts."

We also reject Minkina's assertion that she would have received a greater recovery had the case proceeded in court rather than in arbitration. The portion of her expert's affidavit to this effect was properly struck as speculative. "An expert should not be permitted to give an opinion that is based on conjecture or speculation from an insufficient evidentiary foundation." Van Brode Group, Inc. v. Bowditch & Dewey, 36 Mass. App. Ct. 509, 520 (1994). The expert's affidavit here contained no statistics or other information on comparable recovery or settlement in court versus recovery or settlement in arbitration. Compare Fishman v. Brooks, supra at 647. See Van Brode Group, Inc., supra (no error in excluding expert valuation testimony that was not based on sufficient data). See generally 4 Mallen & Smith, Legal Malpractice § 37.24, at 1685. Minkina successfully recovered over $266,000 in damages, costs, and fees. The arbitrator carefully ruled on the elements of G. L. c. 151B compensatory damages that a court would consider, including those for emotional distress, and awarded legal fees employing the lodestar method also employed by courts. See, e.g., Borne v. Haverhill Golf & Country Club, Inc., 58 Mass. App. Ct. 306, 319-320, 324 (2003) (in discrimination action under G. L. c. 151B, plaintiffs were awarded compensatory damages, including emotional distress damages, and attorney's fees calculated according to lodestar

method); Smith v. Bell Atlantic, 63 Mass. App. Ct. 702, 723-725 (2005) (same). Minkina made no attempt to vacate or appeal the arbitrator's decision.

The mere possibility of recovery of punitive damages in court, but not arbitration, is not sufficient in and of itself to satisfy a malpractice plaintiff's burden of showing that he or she would have made a greater recovery in a particular case. Indeed, in dicta, the arbitrator here stated that "Minkina prevailed on the basis of a burden-shifting analysis, not because there was clear evidence of the type of outrageous conduct which would justify an award of punitive damages."

3. Breach of fiduciary duty. We also discern no error in the judge's decision allowing summary judgment on Minkina's claim that RPS breached its fiduciary duty when it discontinued its representation. According to the Massachusetts Rules of Professional Conduct, "a lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if . . . the representation . . . has been rendered unreasonably difficult by the client . . . [or] other good cause for withdrawal exists." Mass.R.Prof.C. 1.16(b)(5), (6), 426 Mass. 1435 (1998). As this court has previously held, a breakdown in the attorney-client relationship serves as good cause for withdrawal. See Phelps Steel, Inc. v. Von Deak, 24 Mass. App. Ct. 592, 594 (1987).

When there is no longer a basis for trust and confidence, it is not a violation of the code of professional responsibility to discontinue the representation. See ibid. See also Salem Realty Co. v. Matera, 10 Mass. App. Ct. 571, 575 (1980). Indeed, it may even be necessary to do so for "the integrity of the bar." Phelps Steel, Inc. v. Von Deak, supra.

As demonstrated by the e-mail Minkina sent to the partners of RPS, the attorney-client relationship had broken down here. She had accused her primary counsel at the small firm handling her case of gross negligence that had cost her thousands of dollars. She accused this same lawyer of being more concerned with defense counsel interests than Minkina's own interests. She complained about the performance, or lack thereof, of other counsel in the firm as well. She undisputedly did not trust or have confidence in her principal lawyer or the other lawyers who had assisted her in the litigation. As the OBC found, this breakdown in the relationship justified the withdrawal of the representation. We agree.

4. Denial of leave to file second amended complaint. Minkina also contends that it was an abuse of discretion to deny her leave to file her second amended complaint on July 2, 2012. The second amended complaint was filed three years after the first amended complaint. Discovery had closed in February, 2012, and a judge had issued an order in April, 2012, allowing a

third extension but warning that no "further [extensions] should be anticipated."  A summary judgment motion was also pending. In addition, as evidenced by the numerous changes in direction discussed above, the legal theory supporting the malpractice action in the instant case appeared to be continually evolving. In these circumstances, we discern no abuse of discretion in denying the motion for leave to file a second amended complaint. See Mathis v. Massachusetts Elec. Co., 409 Mass. 256, 264-265 (1991) ("[U]nexcused delay in seeking to amend is a valid basis for denial of a motion to amend"); DiVenuti v. Reardon, 37 Mass. App. Ct. 73, 77 (1994) ("Among the good reasons . . . for which a motion to amend may be denied are that no justification for the lateness of the motion is apparent [beyond counsel for the moving party having had a late-dawning idea] and that one or more of the nonmoving parties would be caught off balance by the proffered amendment").[6]

Judgment affirmed.

---

[6] The defendants' request for attorney's fees on appeal is denied.