Joulé, Inc., & others[1] vs. Randi Simmons & another.[2]

Suffolk. November 1, 2010. - March 10, 2011.

Present: Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Anti-Discrimination Law,* Arbitration, Termination of employment. *Contract,* Arbitration. *Employment,* Discrimination. *Practice, Civil,* Interlocutory appeal. *Massachusetts Commission Against Discrimination. Massachusetts Arbitration Act. Federal Arbitration Act. Public Policy.*

This court concluded that even where an employee has signed a presumptively valid employment agreement requiring arbitration of any claim arising from the employee's employment, including a claim of discrimination, the Massachusetts Commission Against Discrimination (MCAD) has authority under G. L. c. 151B, § 5, to conduct its own independent proceeding based on such an employee's complaint of discrimination, and that nothing in such an arbitration provision prohibits the employee from testifying before the MCAD or from providing information, materials, or responses that are necessary for investigation of the case. [93-98]

In a civil action seeking to compel arbitration of a claim of discrimination in employment, the judge erred in granting a stay of further proceedings, where, assuming the validity of the arbitration provision in an employment agreement between the parties, the effect of such a stay was to place in the Massachusetts Commission Against Discrimination primary jurisdiction over the employee's discrimination-based claims rather than to enforce the agreement to arbitrate. [98-100]

Civil action commenced in the Superior Court Department on November 19, 2009.

A motion to intervene was heard by *Thomas E. Connolly,* J., and a motion to compel arbitration was heard by *Paul E. Troy,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Thomas A. Reed (Eugene J. Sullivan, III,* with him) for the plaintiffs.

*Barbara A. Robb (Nancy S. Shilepsky* with her) for the defendant.

*Catherine C. Ziehl* for the intervener.

[1] Joulé Technical Staffing, Inc.; John G. Wellman; Kristin Motta Zwickau; and Kari Burke.

[2] Massachusetts Commission Against Discrimination, intervener.

The following submitted briefs for amici curiae:

*Andrew M. Abraham & J. Michael Conley* for The Massachusetts Academy of Trial Attorneys.

*John Pagliaro & Martin J. Newhouse* for New England Legal Foundation & another.

*Robert S. Mantell* for Massachusetts Employment Lawyers Association.

*Martha Coakley*, Attorney General, *& Maura T. Healey & Jonathan B. Miller*, Assistant Attorneys General, for the Commonwealth.

*Anne L. Josephson & Heidi S. Alexander* for American Civil Liberties Union of Massachusetts & others.

BOTSFORD, J. The plaintiff Joulé Technical Staffing, Inc. (Joulé), employed the defendant, Randi Simmons, from 2008 to 2009.[3] Both were parties to an employment agreement containing an arbitration provision that purported to cover claims of employment discrimination expressly. Simmons was terminated from her position in July, 2009. Simmons, who claims that her termination was based on discrimination and retaliation by Joulé, did not file a claim for arbitration under the arbitration provision, but did file a complaint of discrimination with the Massachusetts Commission Against Discrimination (MCAD). In response, Joulé filed in the Superior Court a complaint and a motion to compel arbitration of Simmons's discrimination claim. Before us is Joulé's interlocutory appeal from the order of a Superior Court judge that in principal part denied Joulé's motion to compel arbitration and stayed all further proceedings in the Superior Court case pending the outcome of the MCAD proceeding.

We conclude that pursuant to G. L. c. 151B, § 5, the MCAD may conduct its own, independent proceeding based on Simmons's complaint. With respect to Joulé and Simmons, however,

---

[3]Joulé Technical Staffing, Inc., is a corporation organized under the laws of New Jersey. It is a subsidiary of Joulé, Inc., also a corporation organized under the laws of New Jersey. John G. Wellman is president of Joulé, Inc. Doing business as CM Access, Joulé Technical Staffing, Inc., has an office in Boston. Kristin Motta Zwickau and Kari Burke are the director and office manager, respectively, of that Boston office. The plaintiffs are referred to collectively in this opinion as Joulé. The defendant Randi Simmons worked at Joulé's Boston office.

if the arbitration provision in Simmons's employment agreement is valid — an issue that remains to be resolved — Joulé has a right to compel arbitration of a dispute between it and Simmons concerning her claim. Accordingly, we vacate the order of the Superior Court and remand for further proceedings.[4]

1. *Facts and procedural history.*[5] Joulé is in the business of providing staffing and business systems support to companies in various States. Joulé hired Randi Simmons for its Boston office in February, 2008, as "selling branch manager." In accepting the position, Simmons turned down another full-time job offer with another company. At some point after she began to work for the company,[6] Joulé provided Simmons with a document titled "Employment Agreement with Confidentiality, Non-Competition, and Arbitration Provisions" (employment agreement, or agreement). The agreement contains an arbitration provision, quoted in the margin.[7] Simmons had not received a copy or been informed

---

[4] We acknowledge the amicus briefs filed by the Attorney General on behalf of the Commonwealth; the Massachusetts Employment Lawyers Association; the New England Legal Foundation and Associated Industries of Massachusetts; and the Massachusetts Academy of Trial Attorneys. We also acknowledge the amicus brief of the American Civil Liberties Union of Massachusetts, together with Charles Hamilton Houston Institute for Race and Justice; Fair Employment Project, Inc.; Gay and Lesbian Advocates & Defenders; Greater Boston Civil Rights Coalition; Greater Boston Legal Services Corporation (on its own behalf and on behalf of the Chelsea Collaborative, the Chinese Progressive Association, the Massachusetts Coalition for Occupational Safety and Health, and Metrowest Immigrant Worker Center); Jewish Alliance for Law and Social Action; Lawyers' Committee for Civil Rights Under Law of the Boston Bar Association; League of United Latin American Citizens-Massachusetts; Massachusetts AFL-CIO; Massachusetts Law Reform Institute; Massachusetts Transgender Political Coalition; National Lawyers Guild, Massachusetts Chapter; and Union of Minority Neighborhoods, and joined by the Disability Law Center and the Massachusetts Chapter of the National Organization of Women.

[5] The facts summarized here are taken from the complaint to enforce the arbitration agreement and accompanying affidavits that Joulé filed in the Superior Court, Joulé's motion to enforce the arbitration agreement and the accompanying affidavit of Zwickau, Simmons's opposition to Joulé's motion to enforce the arbitration provision in Simmons's employment agreement (agreement) and Simmons's own accompanying affidavit, and the arbitration provision itself.

[6] Joulé asserts that this occurred on Simmons's first day of employment; Simmons represents that it occurred "[u]pon or shortly after" she began her employment.

[7] The arbitration provision reads in relevant part:

"a. I hereby understand and agree that disputes between me and

of the employment agreement before starting her job. The agreement provides that Simmons had a right to consult an attorney prior to signing it, but that she would not "be offered employment until [she] sign[ed] and return[ed] this [a]greement." Simmons did not sign the agreement immediately but, rather, delayed until a "specific request was made for it by the human resources department," because she "felt apprehensive and uncomfortable about certain restrictions therein."

At the time Simmons was hired and thereafter presented with the employment agreement, she was pregnant, and the baby was born in due course. Simmons alleges that she was subjected to a hostile work environment and was denied a promotion and salary increase because of Joulé's biases against pregnant women and against women with children. She complained about the issue to Kristin Motta Zwickau, the director of Joulé's Boston office. On July 30, 2009, Joulé terminated Simmons's employment. On August 25, 2009, Simmons filed a complaint with the MCAD asserting discrimination on the basis of sex and pregnancy in violation of G. L. c. 151B, §§ 4 (1) and (11A); G. L. c. 149,

---

Joulé, its employees and/or its clients relating to my employment and/or termination of my employment (which includes without limitation, claims of discrimination, harassment, hostile work environment, retaliation, or other wrongful termination claims) will be resolved by binding arbitration through either the American Arbitration Association ('AAA') or the Judicial Arbitration and Mediation Service ('JAMS'), and by the relevant Joulé Employment Dispute Rules and Procedure in effect at the time of filing the arbitration claim. I understand that my agreement to arbitrate such disputes includes without limitation any disputes or claims arising under the common law or various statutes, including without limitation, termination of my employment by Joulé, discrimination claims, whether under federal, state or local law, regulation or ordinance, claims under any public policy, contract or tort, or under common law . . . . My agreement to arbitrate does not however, apply to any claims for Worker[s'] Compensation or Unemployment Insurance Benefits or any claims involving theft, fraud or other actions against me, which might give rise to criminal penalties, or any type of action where the sole or primary remedy is declaratory and/or injunctive relief against me.

"b. I understand and acknowledge that my agreement to submit all applicable disputes as described above to binding arbitration means that with respect to all such claims I am knowingly, and voluntarily waiving my right to a trial by jury and that I am doing so free of any duress or coercion. . . ."

§ 105D; Title VII of the Civil Rights Act of 1964, 42 U.S.C.
§§ 2000e et seq. (2006) (Title VII); and retaliation in violation of
G. L. c. 151B, § 4 (4). As previously stated, Simmons did not
initiate arbitration proceedings pursuant to the arbitration provi-
sion in the employment agreement. On November 19, 2009,
Joulé filed its complaint and motion to compel arbitration in the
Superior Court. Joulé requested the court to declare that the
agreement was valid and binding on Simmons; that Simmons
was required to submit to arbitration any claim against Joulé
based on the facts alleged in her MCAD complaint; and that
Simmons was precluded from acting as a litigant or party in any
MCAD proceeding against Joulé. Simmons opposed the motion
to compel arbitration, arguing that the arbitration provision in the
agreement was unconscionable and did not unmistakably cover
discrimination claims; and that in any event, her MCAD complaint
or charge could proceed and she was entitled to "participate in
the proceeding as the complainant." The MCAD thereafter filed
an emergency motion to intervene that was allowed by a Superior
Court judge. After a hearing, a different Superior Court judge
(motion judge) accepted the MCAD's argument that its authority
to conduct an investigation and adjudication of Simmons's claim
of discrimination was not affected by the parties' agreement to
arbitrate, and ordered that Joulé's motion to compel arbitration be
denied, that the Superior Court action be stayed pending resolu-
tion of the MCAD's proceeding, and that the arbitration provi-
sion in the employment agreement did not preclude Simmons
from participating as a party in the pending MCAD matter. Joulé
appealed from the motion judge's order pursuant to G. L. c. 251,
§ 18 (a) (1). We granted the applications for direct appellate
review filed by Simmons and the MCAD.

2. *Discussion.* General Laws c. 251, § 18 (a) (1), authorizes
a party to appeal directly from the denial of an application to
compel arbitration. See, e.g., *Warfield* v. *Beth Israel Deaconess
Med. Ctr., Inc.,* 454 Mass. 390, 394 (2009) (*Warfield*). All par-
ties agree, therefore, that Joulé's interlocutory appeal from the
motion judge's order is properly before us. We review the judge's
order de novo. See *Feeney* v. *Dell Inc.,* 454 Mass. 192, 199
(2009), citing *Commonwealth* v. *Philip Morris Inc.,* 448 Mass.
836, 844 (2007). See also *Warfield, supra* at 395 (motion to

compel arbitration treated summarily and judge's order reviewed de novo).

a. *Effect of the employment agreement's arbitration provision on the MCAD.* We consider first the effect of the arbitration provision on the MCAD's ability to pursue its investigation and resolution of Simmons's MCAD complaint. "The MCAD was established to enforce the Commonwealth's antidiscrimination laws." *Stonehill College* v. *Massachusetts Comm'n Against Discrimination*, 441 Mass. 549, 563, cert. denied sub nom. *Wilfert Bros. Realty Co.* v. *Massachusetts Comm'n Against Discrimination*, 543 U.S. 979 (2004) (*Stonehill College*). The MCAD has the power to investigate claims of discrimination on its own, but also has the authority — and generally follows this course — to investigate and pursue complaints filed by individuals. See G. L. c. 151B, § 5. In the latter circumstance, although the complaint is filed by the individual, the agency proceeds in its own name. See *Stonehill College, supra* (in proceeding under G. L. c. 151B, § 5, "it is the MCAD, and not the complainant, that prosecutes the discrimination claim").

We review briefly the MCAD's procedure in investigating such complaints. See generally G. L. c. 151B, § 5. Any individual alleging discrimination in employment (or otherwise), or the Attorney General, may file a complaint with the MCAD. 804 Code Mass. Regs. § 1.10(1) (1999). The chairperson of the MCAD then designates a single commissioner to investigate the complaint promptly. 804 Code Mass. Regs. § 1.10. If the investigating commissioner finds no probable cause for crediting the allegations of the complaint, the commissioner issues a lack of probable cause finding and dismisses the complaint. 804 Code Mass. Regs. § 1.15(7)(b) (2008). If, however, the commissioner determines that probable cause does exist for crediting the allegations, he or she issues a probable cause finding. *Id.* At that point, the investigating commissioner endeavors to "eliminate the unlawful practice complained of through conference, conciliation and persuasion." 804 Code Mass. Regs. § 1.18 (2005). If conciliation is unsuccessful it may be terminated, see 804 Code Mass. Regs. § 1.18(1)(d), and if the investigating commissioner determines that the public interest requires a certification of issues to public hearing, the commissioner issues a complaint in the name of the

MCAD. 804 Code Mass. Regs. § 1.20(3) (2004). Such a public hearing is conducted by an MCAD commissioner other than the investigating commissioner, or by a designated hearing officer, or by the full commission. 804 Code Mass. Regs. § 1.21(1) (1999). The case is prosecuted by an MCAD attorney or other staff member, or in some instances by the complainant's attorney whom the MCAD has designated its agent for the purpose. 804 Code Mass. Regs. § 1.09(5)(a), (b) (1999). A complainant may be permitted to intervene as a party in the case, in the commissioner's discretion, and also be allowed to testify at the hearing. 804 Code Mass. Regs. § 1.20(4) (2004). If, after the hearing, the MCAD finds that the respondent employer has engaged in an unlawful practice as defined in the statute, the MCAD may require the respondent to "cease and desist from such unlawful practice," and may grant relief specific to the complaining individual such as "hiring, reinstatement or upgrading of [the] employee[], with or without back pay . . . as, in the judgment of the [MCAD], will effectuate the purposes of this chapter." G. L. c. 151B, § 5. See 804 Code Mass. Regs. § 1.22 (1999).

Under both Federal and Massachusetts arbitration statutes, it is clear that parties can agree to arbitrate claims of employment discrimination. See *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26-27 (1991); *Warfield*, 454 Mass. at 395-396; *Rosenberg* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 17-21 (1st Cir. 1999). By its express terms, the arbitration provision in Simmons's employment agreement is governed both by the Massachusetts Arbitration Act, G. L. c. 251, § 2 (MAA), and by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (2006) (FAA). For agreements governed by the FAA, the statute's presumption of arbitrability means that "in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA] . . . due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration" (citation omitted). *Volt Info. Sciences, Inc.* v. *Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 475-476 (1989). In *Warfield*, *supra* at 398, we acknowledged this point, but also held that, in view of the strong public policy against discrimination in employ-

ment, any agreement to arbitrate claims of discrimination must be stated clearly and unmistakably.

Even where there is a clear and unmistakable provision in an employment agreement requiring arbitration of discrimination claims, however, it would not affect the MCAD's authority under G. L. c. 151B, § 5. "The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so'. . . . 'Arbitration under the [FAA] is a matter of consent, not coercion.' " *EEOC* v. *Waffle House, Inc.*, 534 U.S. 279, 293, 294 (2002) (*Waffle House*), quoting *Volt Info. Sciences, Inc.* v. *Trustees of Leland Stanford Jr. Univ.*, 489 U.S. at 478, 479. The MCAD is not a party to the employment agreement at issue here, has not agreed to arbitration of Simmons's MCAD complaint, and cannot be bound by the agreement's arbitration provision. "[T]he proarbitration policy goals of the FAA do not require the agency to relinquish its statutory authority if it has not agreed to do so." *Waffle House, supra* at 294. Accordingly, assuming the validity of the agreement's arbitration provision,[8] nothing in it precludes the MCAD from proceeding with its investigation and resolution of Simmons's discrimination complaint — including, if the evidence warrants, granting relief specific to Simmons.

This conclusion is consistent with, and advances, the broad statutory responsibility and authority of the MCAD to investigate and remedy instances of discrimination in the Commonwealth. See *Stonehill College*, 441 Mass. at 562-563, and cases cited ("While the main object of a judicial proceeding under [G. L. c. 151B,] § 9[,] is to recover damages for the individual victim of unlawful discrimination, . . . the primary purpose of an administrative proceeding before the MCAD is to vindicate the public's interest in reducing discrimination in the workplace by deterring, and punishing, instances of discrimination by employers against employees" [citation omitted]). See also *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 534 (2001), quoting *Lynn Teachers Union, Local 1037* v. *Massachusetts Comm'n Against Discrimination*, 406 Mass. 515, 523 (1990) ("the MCAD 'has been charged with the task of combating

---

[8]See discussion at Part 2(b), *infra*.

discrimination in the Commonwealth' "); *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination*, 400 Mass. 156, 170 (1987) ("commission is given broad authority to remedy discrimination"); 804 Code Mass. Regs. § 1.13(4) (1999) ("No waiver agreement signed by any individual shall affect the [MCAD's] right and statutory duty to enforce [ ] G. L. c. 151B . . . or to investigate any complaint filed before it"). The United States Supreme Court reached the same result in the *Waffle House* case where an employee alleging handicap discrimination declined to initiate arbitration proceedings mandated by his employment agreement, but instead timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) under Title VII. *Waffle House*, 534 U.S. at 283, 285. The Court concluded that the EEOC was authorized to bring its own enforcement action against the employer, notwithstanding the arbitration agreement between the employer and employee. *Id.* at 291-292, 296. It further stated that "once a charge is filed . . . the EEOC is in command of the process. . . . Absent textual support for a contrary view, it is the public agency's province — not that of the court — to determine whether public resources should be committed to the recovery of victim-specific relief." *Id.* at 291-292.[9,10]

Joulé appears to agree both that the MCAD is empowered

[9]In *Warfield* v. *Beth Israel Deaconess Med. Ctr., Inc.*, 454 Mass. 390 (2009) (*Warfield*), we wrote that "[a]n agreement to arbitrate employment discrimination claims represents a limited waiver of rights under G. L. c. 151B. An employee who agrees to arbitrate such a claim of course does not forgo the substantive rights afforded by the statute . . . *but does give up the substantial right to seek administrative or judicial remedies*" (emphasis added). *Id.* at 398 n.13. The sole issue in *Warfield* was whether the employee and employer had specifically agreed to arbitrate claims of discrimination within the scope of protection afforded by G. L. c. 151B when they included a general arbitration clause in their employment agreement. See *id.* at 395-396. We concluded that the employee there had not so agreed. *Id.* at 402. To the extent that the highlighted language appearing in a footnote may suggest that an employee who *has* agreed to arbitrate a discrimination claim is precluded from filing a complaint with the MCAD under G. L. c. 151B, § 5, it is incorrect and we do not follow it. See *EEOC* v. *Waffle House, Inc.*, 534 U.S. 279, 288-289, 291 (2002) (*Waffle House*).

[10]An argument has been advanced, and addressed by the parties and amici, that pursuant to G. L. c. 151B, § 5, the MCAD "adjudicates" complaints of discrimination brought by private complainants and, therefore, that the decision of the United States Supreme Court in *Preston* v. *Ferrer*, 552 U.S. 346

and entitled to pursue investigation of Simmons's discrimination complaint under G. L. c. 151B, § 5, and also that nothing in the arbitration provision of the parties' employment agreement does, or could, preclude Simmons from filing a complaint with the MCAD.[11] Joulé argues, however, that beyond filing a complaint with the MCAD, under the arbitration provision, Simmons is barred from being a litigant or party to the MCAD proceeding, and that the motion judge erred in ruling otherwise.[12] Again, if the arbitration provision in Simmons's employment agreement is valid (see Part 2[b], *infra*), we would agree. When

(2008) (*Preston*), controls the outcome here. We disagree. *Preston* involved a contract dispute between an entertainment industry attorney and his television performer client. *Id.* at 350. The parties' contract contained an arbitration provision requiring arbitration of any dispute concerning, among others, the contract's terms, breach, or validity. *Id.* The plaintiff attorney had sought arbitration of the dispute in question, but the defendant client brought suit in State court to enjoin arbitration, arguing that under the California Talent Agencies Act (TAA), the California Labor Commissioner had exclusive original jurisdiction over the matter. *Id.* at 350-351. The Supreme Court rejected the defendant's claim, holding that "when parties agree to arbitrate all questions arising under a contract, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA." *Id.* at 349-350. The point to emphasize, however, is that in *Preston*, the Court was considering who was to adjudicate the private parties' dispute in the first instance, the arbitrator or the administrative agency. See *id.* at 358-359. The Court distinguished *Waffle House*, emphasizing that in that case, "the Court addressed the role of an agency, not as adjudicator but as prosecutor, pursuing an enforcement action in its own name." *Id.* at 359. Indeed, the Court noted, "[e]nforcement of the parties' arbitration agreement in this case does not displace any independent authority the Labor Commissioner may have to investigate and rectify violations of the TAA." *Id.* at 359 n.7. Similarly, as we have discussed in the text, the MCAD, proceeding under G. L. c. 151B, § 5, is prosecuting a claim in its own name and rectifying violations of G. L. c. 151B in the public interest. See *Stonehill College* v. *Massachusetts Comm'n Against Discrimination*, 441 Mass. 549, 563, cert. denied sub nom. *Wilfert Bros. Realty Co.* v. *Massachusetts Comm'n Against Discrimination*, 543 U.S. 979 (2004). It is beside the point that the prosecution takes place not before a judge in a court but in the administrative forum in the first instance.

[11]In its brief, Joulé requests that we vacate the Superior Court order and direct on remand that Simmons be ordered to dismiss her MCAD complaint. However, during oral argument before this court Joulé agreed that, notwithstanding the arbitration provision in the agreement, Simmons was entitled to file a complaint with the MCAD.

[12]The judge's order states that "[t]he Arbitration Agreement, to the extent enforceable, does not preclude Simmons from being a party to the MCAD action."

a complainant files a request to intervene, see 804 Code Mass. Regs. § 1.20(4), she must certify her "allegations of discrimination." 804 Code Mass. Regs. § 1.20(3)(a) (2004). Thus, in essence, the complainant is required to advance a claim of discrimination in her own name. Allowing Simmons to seek to intervene as a party in the MCAD proceeding and to assert directly her individual claim of discrimination would contravene the requirement of the arbitration provision that she resolve her own disputes with Joulé through arbitration. The question whether Simmons may participate in the MCAD proceeding is a different matter. Nothing in the arbitration provision prevents her from testifying before the MCAD, see G. L. c. 151B, § 5, or from "provid[ing] information, materials or responses to [Joulé's] submissions which are necessary for investigation of the case" to obviate administrative foreclosure in accordance with 804 Code Mass. Regs. § 1.15(5)(b) (1999).

b. *Stay of court proceedings.* It is Joulé's position that the motion judge erred in granting the stay of further proceedings in its Superior Court action because, in accordance with *Warfield*, the terms of the arbitration provision are clear and unmistakable, and Simmons lacks any ground sufficient to revoke her agreement to arbitrate. See *Warfield*, 454 Mass. at 398. We agree that the stay should not have been granted, but for different reasons.

The motion judge assumed in effect that the arbitration provision was valid and, by staying Joulé's court action until the MCAD concluded its proceeding, appears to have adopted the premise advanced by the MCAD, namely, that the agency's proceeding takes precedence over any arbitration. However, "when parties agree to arbitrate all questions arising under a contract, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA." *Preston* v. *Ferrer*, 552 U.S. 346, 349-350 (2008). In staying further proceedings in Joulé's action to enforce the parties' agreement to arbitrate, the motion judge in effect placed primary jurisdiction over Simmons's discrimination-based claims in the MCAD. This was error. If an employer and employee enter into a valid and sufficiently clear agreement to arbitrate any and all disputes relating to discrimination, then the party seeking arbitration of such a dispute is entitled to have the agreement enforced.

See *Commonwealth* v. *Philip Morris Inc.*, 448 Mass. 836, 844-849 (2007) (arbitration provision enforced where dispute "falls squarely" under that provision). Cf. *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. at 23, 35 (employee's age discrimination claim can be subjected to compulsory arbitration pursuant to arbitration provision in mandated employment-related agreement signed by employee). For the reasons previously discussed, if, as in this case, the MCAD were then pursuing an investigation of the discrimination claim, the agency could proceed notwithstanding the arbitration provision in the parties' agreement, see *Waffle House*, 534 U.S. at 291-292, and there is no legal bar to having an arbitration and the MCAD proceeding continue concurrently, on parallel tracks.[13]

In sum, Joulé would appear entitled to compel arbitration of a dispute with Simmons over her claims of employment discrimination if the agreement's arbitration provision is valid and meets the "clear and unmistakable" requirements of *Warfield*.[14] Accordingly, the motion judge should have considered the merits

---

[13]As other courts have noted, there is an inefficiency inherent in having the same core issues be the subject of simultaneous but separate proceedings in two different forums. See, e.g., *Marie* v. *Allied Home Mtge. Corp.*, 402 F.3d 1, 16 (1st Cir. 2005). Cf. *Dean Witter Reynolds Inc.* v. *Byrd*, 470 U.S. 213, 217 (1985) ("the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where the result would be the possibly inefficient maintenance of separate proceedings in different forums"). But if an employer decides to initiate arbitration while a related proceeding before the MCAD is ongoing, the decision whether to stay the arbitration proceeding pending the outcome of the MCAD case would appear to be up to the arbitrator. See *Marie* v. *Allied Home Mtge. Corp.*, *supra* at 16 nn.11, 13.

Another question raised by such simultaneous proceedings is the impact a settlement of the arbitration or final arbitration award would have on the MCAD's adjudication or on the type of relief the MCAD may order. See *Waffle House*, 534 U.S. at 297 ("It is an open question whether a settlement or arbitration judgment would affect the validity of the EEOC's claim or the character of relief the EEOC may seek"). But, as the Supreme Court also stated, "it 'goes without saying that the courts can and should preclude double recovery by an individual.' " *Id.*, quoting *General Tel. Co. of the Northwest* v. *EEOC*, 446 U.S. 318, 333 (1980).

[14]The record reflects that Simmons refused to pursue arbitration under the employment agreement, and she may take the position that she does not have any "disputes" with Joulé. But the arbitration provision provides that "disputes between [the employee] and Joulé" are to be resolved by arbitration; this language appears to enable Joulé itself to initiate arbitration if it considers

of Simmons's challenge to the validity of the agreement's arbitration provision, namely, that its arbitration provision was unconscionable and therefore unenforceable.[15] On remand, this challenge must be resolved.[16] If Simmons's claim is upheld, then, obviously, arbitration cannot be ordered, and dismissal of Joulé's complaint would be in order. But if Simmons does not prevail on her challenge, then Joulé's motion to compel arbitration should be allowed.

there to be a dispute, notwithstanding Simmons's position. The determination whether there is a dispute between the parties presumably would be a matter for the arbitrator. Cf. *Massachusetts Highway Dep't* v. *Perini Corp.*, 444 Mass. 366, 373 n.10 (2005) (interpretive assumption "that an agreement that does not expressly empower the arbitrator to decide issues of the agreement's interpretation leaves those issues to the courts . . . does not survive *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79 [2002]"); *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990), quoting *Morceau* v. *Gould-National Batteries, Inc.*, 344 Mass. 120, 124 (1962) ("question of interpretation of the agreement is for the arbitrator").

[15]Simmons contended below — and argues here — that in addition to being unconscionable, the arbitration provision does not satisfy the specificity requirements of *Warfield*, 454 Mass. at 398, and therefore does not cover her discrimination claims in any event. The argument fails. The arbitration provision, quoted in full, see note 7, *supra*, provides in pertinent part that "disputes between me [Simmons] and Joulé, its employees and/or its clients *relating to my employment and/or termination of my employment (which includes without limitation, claims of discrimination, harassment, hostile work environment, retaliation,* or other wrongful termination claims) will be resolved by binding arbitration" (emphasis added). This language makes it "clear and unmistakable," see *Warfield, supra,* that the arbitration provision applies to employment discrimination claims. We do not agree with Simmons that the reference to waiver of the right to a jury trial in the second paragraph of the arbitration provision (see note 7, *supra*) renders ambiguous the language quoted here from the provision's first paragraph. Finally, we understand Simmons's complaints about the specific arbitration procedures that Joulé has prescribed and the difficulty in locating a description of them as relevant to Simmons's claim of unconscionability, not to whether the arbitration provision meets the *Warfield* standard.

[16]In challenging the arbitration provision as unconscionable, Simmons raises a host of claims. Some of these claims, such as that Simmons was forced to sign the employment agreement with the arbitration provision included after she began employment and had turned down other employment opportunities, and that the procedures governing arbitration are hidden in other documents unilaterally subject to change (see note 14, *supra*), do relate to the issue of unconscionability. Others, however, appear to challenge the conclusion reached by the United States Supreme Court and this court, as stated in *Warfield*, 454 Mass. at 399-401, that claims of employment discrimination can be subject to private arbitration. We leave for the Superior Court judge on remand the separation of these claims and their subsequent resolution.

3. *Conclusion.* The order of the Superior Court denying the motion to compel arbitration is vacated, and the case is remanded to the Superior Court for proceedings consistent with this opinion.

*So ordered.*