Connors, Thomas A., J.
The plaintiff, Joule Technical Staffing, Inc., a subsidiary of plaintiff, Joule, Inc. (collectively Joule), hired the defendant, Randi Simmons, for the position of selling branch manager overseeing sales in a portion of the territory in which it conducted business. Among the items of paperwork presented Simmons by her employer at the time she commenced employment which she did eventually sign, was an agreement that disputes between the two would be subject to arbitration. Roughly eighteen months after she had been hired, Simmons was terminated by Joule.
Simmons instituted action against the Joule entities with the Massachusetts Commission Against Discrimination (MCAD), alleging that she had been subject to unlawful discrimination and retaliation in employment. Her complaint with that agency also listed as defendants the individuals who are plaintiffs in this action, John G. Wellman who is president of the two companies, and Kristin Motta Zwickau and Kari Burke, both of whom work in management at the company’s Boston office.
The plaintiffs challenged the right of Simmons to proceed on her MCAD complaint, alleging that the terms of the agreement she had signed after her hire mandated the arbitration procedure referenced in its terms as the exclusive vehicle for resolution of disputes as the one she was pursuing as a litigant before the MCAD. It filed this action which sought a declaratory judgment to compel arbitration of the parties’ dispute, citing the state and federal arbitration acts and alleging also that Simmons’ actions had constituted a breach of the parties’ contract which had caused harm to Joule.
This court initially ordered the plaintiffs’ action to compel arbitration stayed pending the MCAD’s resolution of the claim which Simmons there had filed. On interlocutory review, the Supreme Judicial Court vacated that order of stay, permitting the plaintiffs to pursue their claimed relief in this court, while the MCAD proceeds under its statutory mandate under G.L.c. 151B to investigate the claim of improper conduct on the part of these plaintiffs. Joule, Inc. v. Simmons, 459 Mass. 88, 91 (2011). That ruling directed that this court rule on the validity of the arbitration agreement, with an affirmative ruling on that issue triggering compulsory arbitration of the dispute, notwithstanding the pendency of the MCAD case, noting that “there is no legal bar to having an arbitration and the MCAD proceeding continue concurrently, on parallel tracks.” Id.
The plaintiffs have now renewed their motion to compel arbitration of Simmons’ claim. Simmons opposes that motion, and argues that the document which references arbitration is not valid and is unenforceable. Hearing on the motion was conducted on October 12, 2011.
Legal Standard
Under both state and federal law, it is clear that parties to an employment agreement can agree to arbitrate claims and disputes which might arise between them. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26-27 (1991). Warfield v. Beth *224 Israel Deaconess Medical Center, 454 Mass. 390, 395-96 (2009). Where the agreement states, as here, that it is governed by the Federal Arbitration Act, 9 U.S.C. §§1 et seq., due regard must be given to that act’s expression of a presumption in favor of arbitrability of claims, with any ambiguities as to the scope of the contractual provision resolved in favor of arbitration. Joule, Inc., supra, at 94, citing Volt Info. Sciences, Inc. v. Trustes of Leland Stanford Jr. University, 489 U.S. 468, 475-76 (1989).
G.L.c. 251, §2 provides that a party aggrieved by the refusal of another to proceed to arbitration of a dispute between the two where a written agreement of the parties requires arbitration may apply to this court for an order directing that such a procedure take place. The statute does provide an opposing party who questions the existence of a valid agreement to arbitrate to have the issue addressed by the court, with the proviso that such a determination as to the agreement’s validity be decided summarily. G.L.c. 251, §2(a). See St. Fleur v. WPI Cable Systems/Mutron, 450 Mass. 345, 353 (2008).
Notwithstanding the strong public policy favoring arbitration which underlies c. 251 as well as the presumption contained in the Federal Arbitration Act, Home Gas Corp. of Mass., Inc. v. Walter's of Hadley, Inc., 403 Mass. 772, 774 (1989), it remains available to the party opposing arbitration to assert traditional grounds which would permit the voiding of a contract, such as fraud, duress, and unconscionability to seek to deny an action to compel arbitration. See St. Fleur, supra, at 350, citing Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996), and Miller v. Cotter, 448 Mass. 671, 677 (2007).
Ruling
In its earlier decision which dealt with this selfsame case, the Supreme Judicial Court has already ruled that consideration of the issue concerning validity of the arbitration agreement may still go forward, as already referenced, despite the ongoing nature of the MCAD action. Joule v. Simmons, supra, at 99-100. That Court has also already ruled, favorably to Joule, that the provision in the parties’ agreement concerning Simmons’ employment meets the requirement enunciated in Warfield v. Beth Israel Deaconess Medical Center, 454 Mass. at 398, that its terms are sufficiently “clear and unmistakable” that it properly should apply to the type of claims in dispute between these parties. Id. and n. 15. What then remains for this court’s determination, post-appeal, is Simmons’ contention that the arbitration agreement contained in the materials given her by Joule is rendered unenforceable as a matter of Massachusetts contract law on the grounds that its terms are unconscionable.
Historically, the law has recognized a basis for the avoidance of a contract on grounds of unconscionability if it was “such that no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other.” Hume v. United States, 132 U.S. 406, 411 (1899), quoting Earl of Chesterfield v. Janssen, 28 Eng.Rep. 82, 100 (Ch. 1750). Our courts have further described the sort of contract which could be viewed as unenforceable by virtue of unconscionability as one where “the sum total of its provisions drives too hard a bargain for a court of conscience to assist.” Waters v. Min. Ltd., 412 Mass. 64, 66 (1992), quoting Covich v. Chambers, 8 Mass.App.Ct. 740, 750 n.13 (1979). As there is no “all-purpose definition” of the term ‘unconscionable’ “ the application of the term must by necessity be addressed on a case-by-case basis. Zapatha v. Dairy Mart, Inc., 381 Mass. 284, 292-93 (1980). The case law has also noted in evaluating this issue, that particular attention must be paid to whether the challenged agreement could result in oppression and unfair surprise to the disadvantaged party, and not to disturbance of the allocation of risks which result from ’’superior bargaining power." Waters v. Min. Ltd., 412 Mass. at 68, quoting Zapatha, 381 Mass. at 292-93.
Simmons does not rely upon one single aspect or provision in the contract as rendering it in toto unenforceable on grounds of unconscionability. Instead, she cites an aggregation of aspects related to her arbitration agreement with Joule which she says makes its application to her unconscionable. In her memorandum in opposition to Joule’s motion to enforce, she cites specifically the following: the shortening of the limitations period in which she can raise a claim to be arbitrated; that she will be afforded insufficient discovery subject to limitation by the arbitrator; the fact that the agreement calls for the proceeding to take place at Joule’s office; that certain of the provisions relating to the arbitration process were not set forth in the agreement, but were contained in other documents which might be subject to unilateral change by Joule; that she was presented with the agreement after she had accepted the position and turned down other employment; and finally, that it excludes certain types of disputes from its purview resulting in a lack of mutuality.[1]
Perhaps Simmons’ two strongest arguments in support of her position, the issue relating to limitation on filing of an arbitration claim and that relating to the subjecting of terms which relate to any filing being lodged in separate documents, themselves subject to unilateral change by the employer are interrelated. The provision relating to arbitration in the parties’ agreement, labeled “Arbitration of Employee Claims,” contains four separate paragraphs and comprises roughly a single page. In paragraph (a) of that provision, however, it asserts that arbitration is to be conducted according to the rules of the relevant arbitrating entity, the American Arbitration Association or Judicial Arbitration and Mediation Service, and also specifically “by the relevant Joule Employment Dispute Rules and Procedures in effect at the time of filing the arbitration claim.”
*225 Joule does have an extant written “Dispute Resolution Procedure[s]” (“Procedures”) which is somewhat longer than the Arbitration provision itself. Certain parts of this procedure track specific language from the Arbitration provision, while outlining in somewhat greater detail the sort of grievances intended to be covered, for example, referencing discrimination, wrongful termination, hostile work environment, and retaliation. The “Procedures” go on to outline the manner in which it is expected an employee aggrieved in employment with Joule will proceed, beginning with a consultation with his or her manager which “should” take place within five calendar days, and a second alternative avenue of approaching a higher-level manager if the grievance is with the direct supervisor. It then sets forth a third alternative, labeled “Alternative Channels,” by which the employee may present the grievance directly to the Director of Human Resources for the employee’s Division. If the matter is not resolved, the Director is then to forward the issue to Joule’s President, whose decision will be final “unless the employee invokes arbitration under this procedure.” The “Procedures” then provides that an employee dissatisfied with the President’s decision is given a thirty-day time limit in which to file a writing with Joule requesting arbitration.
Analysis of this provision contained in the “Procedures” as it relates to mandatory arbitration of claims itself presents difficulties in its interpretation. As a threshold matter, it appears expressly to apply only to the third alternative in which the employee has sought the “Alternative Channels” resolution by seeking recourse to the Director of Human Resources rather than to the first two paths for presentation of employee disputes, involving the employee’s immediate supervisor and a higher-level supervisor. While common-sensically it might be assumed that the first two categories would result in a channeling of an unresolved complaint to the Director and hence to the President, thereby ripening the employee’s ability to seek arbitration, that is not set forth specifically in any manner in Joule’s procedural governance document.
Secondly, the “Procedures” provision relating to recourse for an employee unhappy with the President’s determination states his or her right to arbitrate if “the claim involves a material aspect of employment or an allegation of a violation of any law.” It offers no definition for the employee’s benefit of what a “material aspect of employment” might be nor does it further explain whether this is intended to be a delimiter as to what claims the aggrieved employee is entitled to bring into arbitration.
Beyond these issues of problems of interpretation and application of Joule’s document affecting arbitration rights, are the two specific issues raised by Simmons — first the temporal limitation on the ability to pursue claims, and second the fact that the “Procedures” provision in which that limitation provision is contained is itself subject to unilateral revision by Joule. Simmons points out that in the absence of the arbitration contract’s provision which mandates a thirty-day limit for filing of claims, any claim which she might have asserted for discrimination or retaliation in employment would have been subject to the legislatively-ordained statute of limitations period of three years applying for filing of such claims in the Superior Court.[2] G.L.c. 151B, §5. Pelletier v. Town of Somerset, 458 Mass. 504, 520 (2010). That period for court filing has been drastically reduced by operation of the limitation provision which Joule has included in its “Procedures” addendum to the parties’ arbitration contract provision.
There are no Massachusetts cases cited by Simmons which have found an arbitration agreement unconscionable by virtue of a shortening of a statute of limitations period or the other factors which Simmons cites.[3] The court must measure whether the terms of the agreement, its “purpose and effect,” rendered it unconscionable. Miller v. Cotter, 448 Mass. 671, 680 (2007). The agreement here gives the court pause. The “bilateraliiy” of the agreement is surely somewhat compromised by the ability of Joule effectively to modify certain of its terms through the expedient of unilateral alteration of its Dispute Resolution Procedures which are incorporated by reference in the agreement which Simmons signed.[4] On the other hand, there is no allegation that Joule amended the substantive terms of that document between the time of Simmons’ signing and the time of the parties’ dispute. Plainly, the appending of the separate Dispute Resolution Procedures document to the agreement at the time that Simmons signed it would have minimized the question of potential of unfairness.
The question here the court regards as a close one. The decisional law in the Commonwealth which sets forth the standard a party must meet to establish a contract as unenforceable by reason of unconsciona-bility does not appear to provide a litigant in Simmons’ position with a particularly low hurdle to surmount. See Miller v. Cotter, 448 Mass. at 680; Zapatha v. Dairy Mart, Inc., 381 Mass. at 293-95. See also Waters v. Min., 412 Mass. at 68-69 (trial court’s finding of unconscionability upheld where naive and vulnerable plaintiff was inveigled by agent of defendant to enter contract to sell her rights under annuity for one-fourth of its present value). Additionally, the court takes into account that the Supreme Judicial Court when it rejected a challenge to an arbitration agreement based upon unconscionability grounds specifically cited as a consideration that arbitration of disputes is “heavily favored by statute and case law.” Miller v. Cotter, 448 Mass. at 680. Notwithstanding the court’s reservations concerning particular aspects of the agreement and especially its incorporation of the potentially modifiable “Procedures,” under principles of governing *226 law, the agreement to arbitrate here is not one which admits to avoidance on grounds of unconscionability.
Order for Entry of Judgment
The Court enters Declaratory Judgment that the Arbitration Agreement between the plaintiff and the corporate defendant is binding and obligates her to submit any claim relating to her employment with that defendant to arbitration as provided for in that agreement.

 Simmons is not seeking an evidentiary hearing on the issue of enforceability of the arbitration agreement, basing her argument on the contention that the array of claimed unfair and oppressive factors contained in the arbitration agreement make out her defense to the contract, here on the basis of unconscionability, as a matter of law. Contrast St. Fleur v. WPI, 450 Mass. at 348 and 355 (employee’s claim of fraud in the inducement as a defense to enforcement of arbitration agreement presented a dispute of material fact which necessitated an evidentiary hearing).

The statute includes a separate limitation period of 300 days from the date of the act of alleged discrimination or retaliation for filing a claim with the MCAD.

Under the law of at least one jurisdiction, California, provisions of an arbitration agreement which shorten the limitations period which would otherwise be available to pursue a claim against an employer have been ruled unconscionable rendering the agreement to arbitrate unenforceable. Circuit City, Inc. v. Adams, 279 F.3d 889, 894-95 (9th Cir. 2002). It is not wholly clear if the standard for determining unconscionablity of a contract is the same in the Commonwealth as that applied under the statutory and common law of that jurisdiction. See Amendariz v. Foundation Health Psychare, 6 P.3d 669, 694 (Cal.SupremeCt. 2002) and Cal. Civil Code 1670.5.

Simmons argues that lack of bilaterality is evidenced by the agreement’s carve out for specific categories of matters, specifically claims for workers’ compensation or unemployment compensation benefits, claims for fraud or theft which might give rise to criminal penalties, and matters in which injunctive relief is sought by Joule. The first category seems to be both beneficial to the employee and legally mandated by considerations of public policy: the second appears unlikely to give rise to an arbitrable claim in any practical sense: and the third is plainly a matter which is beyond the power of an arbitrator to grant. This limitation to the agreement would not seem to present a strong basis for Simmons’ challenge to enforcement on grounds of unconscionability.